UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x
                                       :
UNITED STATES OF AMERICA               :    **SEALED INDICTMENT**
                                       :
         - v. -                        :    19 Cr. ___
                                       :
DONALD BLAKSTAD,                       :    19 CRIM 486
                                       :
                Defendant.             :
                                       :
- - - - - - - - - - - - - - - - - - - x

### COUNT ONE
(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

**Relevant Entities and Individuals**

1.  At all relevant times, Illumina, Inc. ("Illumina") was a biotechnology company headquartered in San Diego, California. Illumina's stock traded on NASDAQ under the symbol "ILMN."

2.  At all relevant times, Martha Patricia Bustos, a coconspirator not named as a defendant herein, was an employee of Illumina. At certain relevant times, Bustos was a certified public accountant who worked in Illumina's accounting department. By virtue of her employment at Illumina, Bustos had access to material non-public information about Illumina's financial condition, including its earnings.

3.  At all relevant times, DONALD BLAKSTAD, the defendant, was the owner and principal of an entity called Midcontinental Petroleum, Inc. ("Midcontinental Petroleum"), which purported to

be in the business of soliciting investments in the oil and gas industry.

4. At all relevant times, a San Francisco-based coconspirator not named as a defendant herein ("CC-1") was a principal of a New York-based investment firm ("Firm-1") and a business associate of DONALD BLAKSTAD, the defendant.

5. At all relevant times, a New York, New York-based coconspirator not named as a defendant herein ("CC-2") was an owner and managing principal of Firm-1 and another investment firm ("Firm-2") and a business associate of DONALD BLAKSTAD, the defendant.

6. At all relevant times, a California-based coconspirator not named as a defendant herein ("CC-3") owned and operated an antique watch business and was a business associate of DONALD BLAKSTAD, the defendant.

7. At all relevant times, a Florida-based coconspirator not named as a defendant herein ("CC-4") was a friend and business associate of DONALD BLAKSTAD, the defendant.

### Overview of the Insider Trading Scheme

8. From in or about 2016 through in or about 2018, DONALD BLAKSTAD, the defendant, participated in an insider trading scheme centered around obtaining material nonpublic information ("Inside Information") about Illumina's financial condition and

then causing Illumina securities to be bought or sold depending on the nature of the information.

9. To effectuate the scheme, DONALD BLAKSTAD, the defendant, obtained Inside Information about Illumina's financial condition from Martha Patricia Bustos before that information was released to the public by Illumina. As BLAKSTAD well knew, Bustos was an accountant at Illumina who owed a duty to keep Inside Information about Illumina's financial condition confidential.

10. DONALD BLAKSTAD, the defendant, aware of Bustos's breach of duty, used this Inside Information to cause profitable transactions in Illumina securities to be executed. At relevant times, BLAKSTAD tipped his coconspirators and other associates with knowledge that they would trade on the Inside Information. BLAKSTAD also arranged for his coconspirators and other associates to purchase Illumina securities for BLAKSTAD's benefit in accounts controlled by his coconspirators and other associates to avoid detection.

11. Following the public announcement of Illumina's earnings, DONALD BLAKSTAD, the defendant, and his associates sold the Illumina securities at a significant profit. As a consequence of this scheme, BLAKSTAD and his associates obtained approximately $6 million in profits from purchasing and selling Illumina securities.

**The April 2016 Trading**

12. On or about April 18, 2016, shortly after market close, Illumina publicly announced that its estimated revenue for first quarter 2016 was approximately $572 million, which, as Illumina set forth in its announcement, "fell short of expectations" (the "April 2016 Announcement").

13. Before Illumina issued the April 2016 Announcement, Martha Patricia Bustos, by virtue of her position at Illumina, received Inside Information about Illumina's financial condition for the first quarter of 2016, and DONALD BLAKSTAD, the defendant, obtained that information from Bustos, in breach of her duty to Illumina.

14. After DONALD BLAKSTAD, the defendant, had obtained this Inside Information and before the April 2016 Announcement, BLAKSTAD tipped CC-4. From on or about April 14, 2016 through on or about April 18, 2016, before the April 2016 Announcement was issued, CC-4 purchased a total of approximately 300 "out-of-the-money" Illumina put option contracts for a total of approximately $98,705. The value of these put option contracts would increase if Illumina's stock price declined after the April 2016 Announcement.

15. Following the April 2016 Announcement, Illumina's stock price indeed declined, as DONALD BLAKSTAD, the defendant, well knew it would, and CC-4's Illumina put option contracts

4

increased in value. On or about April 19, 2016, CC-4 sold the Illumina put option contracts at a total profit of approximately $322,625.

### The October 2016 Trading

16. On or about October 10, 2016, shortly after market close, Illumina publicly announced estimated revenue of $607 million for the third quarter of 2016 (the "October 2016 Announcement"). The reported estimated revenue was lower than management's guidance range of approximately $625 million to $630 million for the third quarter of 2016.

17. Before the October 2016 Announcement, Martha Patricia Bustos, by virtue of her position at Illumina, obtained Inside Information about Illumina's financial condition for the third quarter of 2016, and DONALD BLAKSTAD, the defendant, obtained that information from Bustos, in breach of her duty to Illumina.

### *Trading Involving CC-1 and CC-2*

18. On or about October 10, 2016, hours before the October 2016 Announcement, DONALD BLAKSTAD, the defendant, CC-1, and CC-2 arranged to purchase approximately 1,542 "out-of-the-money" Illumina put option contracts for a total cost of approximately $110,000 in a brokerage account in the name of CC-1. The value of these put option contracts would increase if Illumina's stock price declined after Illumina's third quarter 2016 financial results were made public. BLAKSTAD coordinated the purchase in

5

part by exchanging telephone calls and emails with CC-2, who was based in New York, New York and maintained an office for Firm-1 there.

19. Shortly after the October 2016 Announcement was issued, Illumina's stock price indeed declined, and the Illumina put option contracts purchased by CC-1 increased in value. On or about October 11, 2016, after the October 2016 Announcement was issued, CC-1 sold the approximately 1,542 Illumina put option contracts for approximately $2,704,815, representing an investment return of approximately 2,466 percent. CC-1 subsequently transferred approximately $2,568,923 of the proceeds to a bank account in the name of Midcontinental Petroleum, controlled by DONALD BLAKSTAD, the defendant (the "BLAKSTAD Bank Account"), which wires traveled through New York, New York. CC-1 and CC-2 kept the remainder of the proceeds as a purported "investment manager" fee.

### Trading Involving CC-3

20. After DONALD BLAKSTAD, the defendant, received Inside Information from Martha Patricia Bustos, and before the October 2016 Announcement was issued, BLAKSTAD tipped CC-3. CC-3, while in New York, New York, called CC-3's broker in an unsuccessful attempt to purchase Illumina securities in CC-3's brokerage account. CC-3 then arranged for a brokerage account controlled by a friend and business associate of CC-3 ("Associate-1") to

6

purchase approximately 657 out-of-the-money Illumina put option contracts for approximately $46,483.

21. Shortly after the October 2016 Announcement was issued, Illumina's stock price indeed declined, and the Illumina put option contracts purchased in Associate-1's brokerage account increased in value. On or about October 11, 2016, Associate-1's brokerage account sold the put option contracts for approximately $1,013,834, representing an investment return of approximately 2,181 percent. On or about October 11, 2016, Associate-1 transferred approximately $900,000 of the proceeds to a bank account controlled by CC-3.

## Trading Involving CC-4

22. After DONALD BLAKSTAD, the defendant, had obtained Inside Information about Illumina's third quarter 2016 financial condition from Martha Patricia Bustos and before the October 2016 Announcement was issued, BLAKSTAD tipped CC-4. On or about October 10, 2016, before the October 2016 Announcement was issued, CC-4 purchased approximately 171 out-of-the-money Illumina put option contracts for approximately $51,982.

23. Following the October 2016 Announcement, Illumina's stock price decreased, and CC-4's Illumina put option contracts increased in value. CC-4 sold all of the Illumina put option contracts for a total profit of approximately $396,393.

7

**The August 2017 Trading**

24. On or about August 1, 2017, shortly after market close, Illumina publicly announced "strong" financial results for the second quarter of 2017 (the "August 2017 Announcement"). In making the August 2017 Announcement, Illumina noted, among other things, revenue of approximately $662 million for the second quarter of 2017, representing an increase of approximately 10 percent from the same period in the prior year.

25. Before the August 2017 Announcement, Martha Patricia Bustos, by virtue of her position at Illumina, received Inside Information about Illumina's financial condition for the second quarter of 2017, and DONALD BLAKSTAD, the defendant, obtained that information from Bustos in breach of her duty to Illumina.

*Trading Involving CC-2 and CC-3*

26. After DONALD BLAKSTAD, the defendant, had obtained Inside Information about Illumina's second quarter 2017 financial condition from Martha Patricia Bustos and before the August 2017 Announcement was issued, BLAKSTAD tipped CC-3. Through the BLAKSTAD Bank Account, BLAKSTAD subsequently received a total of approximately $305,000 through Associate-1 and $175,000 from a friend and business associate of BLAKSTAD, who operated a jewelry business ("Associate-2").

27. On or about July 28, 2017, DONALD BLAKSTAD, the defendant, wired approximately $500,000 from the BLAKSTAD Bank

8

Account to an account in the name of Firm-1, which wire traveled through New York, New York. On or about July 31, 2017, BLAKSTAD wired $250,000 to an account in the name of Firm-2.

28. On or about August 1, 2017, a brokerage account in the name of Firm-1, controlled by CC-2, purchased on behalf of DONALD BLAKSTAD, the defendant, approximately 7,250 shares of Illumina stock for a total of approximately $1,247,753. On that same date, a brokerage account in the name of Firm-2, controlled by CC-2, purchased on BLAKSTAD's behalf approximately 890 out-of-the-money Illumina call option contracts for approximately $249,199, securities that would increase in value if Illumina's stock price went up after the August 2017 Announcement was issued, as BLAKSTAD well knew it would. BLAKSTAD coordinated the purchases in part by exchanging telephone calls and emails with CC-2, who was based in New York, New York.

29. Following the August 2017 Announcement, Illumina's stock price increased, and CC-2's Illumina call option contracts increased in value. On or about August 2, 2017, CC-2 sold the Illumina call option contracts for a total profit of approximately $1,087,325 and the Illumina stock for a total profit of approximately $155,677. CC-2 subsequently transferred a total of approximately $1,930,724 from Firm-1 and Firm-2 to the BLAKSTAD Bank Account. CC-2 retained approximately $62,150 as a purported advisory fee.

*Trading Involving CC-4*

30. After DONALD BLAKSTAD, the defendant, had obtained Inside Information about Illumina's second quarter 2017 financial condition from Martha Patricia Bustos and before the August 2017 Announcement, BLAKSTAD tipped CC-4. On or about July 31, 2017, and August 1, 2017, CC-4 purchased a total of approximately 350 Illumina call option contracts, the majority of which were out of the money, for a total of approximately $161,855. The value of these call option contracts would increase if Illumina's stock price went up after the August 2017 Announcement, as BLAKSTAD well knew it would.

31. Following the August 2017 Announcement, Illumina's stock price increased, and all of CC-4's Illumina call option contracts increased in value. On or about August 2, 2017, CC-4 sold the Illumina call option contracts for a total profit of approximately $315,000. On or about August 3, 2017, CC-4 wrote a $100,000 check payable to "Midcontinental Petroleum," with a memo line reading "Loan Repayment," which DONALD BLAKSTAD, the defendant, deposited into the BLAKSTAD Bank Account.

**The July 2018 Trading**

32. On or about July 30, 2018, shortly after market close, Illumina publicly announced its revenue for the second quarter of 2018 was $830 million, which was "a 25% increase compared to $662 million in the second quarter of 2017" (the "July 2018

10

Announcement"). The July 2018 Announcement also stated: "For fiscal 2018, the company now projects revenue growth of approximately 20%," a higher projection than Illumina had made in the previous quarter.

33. Before the July 2018 Announcement, Martha Patricia Bustos, by virtue of her position at Illumina, received Inside Information about Illumina's financial condition for the second quarter of 2018, and DONALD BLAKSTAD, the defendant, obtained that information from Bustos in breach of her duty to Illumina.

34. After DONALD BLAKSTAD, the defendant, had obtained Inside Information about Illumina's second quarter 2018 financial condition from Martha Patricia Bustos and before the July 2018 Announcement was issued, BLAKSTAD tipped CC-4 and Associate-2.

35. On or about July 30, 2018, Associate-2 sold previously purchased Illumina put option contracts and purchased approximately 14 out-of-the-money Illumina call option contracts. The value of these call option contracts would increase if Illumina's stock price went up after the July 2018 Announcement, as DONALD BLAKSTAD, the defendant, and Associate-2 well knew it would.

36. On or about July 30, 2018, before the July 2018 Announcement was issued, CC-4 purchased approximately 185 out-

11

of-the-money Illumina call option contracts for approximately $89,204.

37. Following the July 2018 Announcement, Illumina's stock price indeed increased, and CC-4's and Associate-2's Illumina's call option contracts increased in value. On or about July 31 and August 1, 2018, Associate-2 sold nine of Associate-2's previously purchased call option contracts at a profit of approximately $28,279, and CC-4 sold CC-4's Illumina call option contracts for a total profit of approximately $59,092.

### Statutory Allegations

38. From in or about 2016 through in or about 2018, in the Southern District of New York and elsewhere, DONALD BLAKSTAD, the defendant, Martha Patricia Bustos, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

39. It was a part and object of the conspiracy that DONALD BLAKSTAD, the defendant, Martha Patricia Bustos, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of

national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Overt Acts

40. In furtherance of the conspiracy and to effect its illegal object, DONALD BLAKSTAD, the defendant, Martha Patricia Bustos, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On or about April 15, 2016, after speaking with BLAKSTAD, CC-4 purchased approximately 65 Illumina put option contracts.

    b. On or about October 4, 2016, Martha Patricia Bustos obtained Inside Information about Illumina's third quarter 2016 financial condition.

c. On or about October 9, 2016, Blakstad and CC-2, who was located in New York, New York, entered into a purported "advisory agreement."

d. On or about July 26, 2017, BLAKSTAD and Bustos exchanged text messages to coordinate an in-person meeting.

e. On or about August 3, 2017, BLAKSTAD deposited a check from CC-4 into the BLAKSTAD Bank Account, representing the proceeds of CC-4's Illumina trades, as a purported "Loan Repayment."

f. On or about July 30, 2018, after speaking with BLAKSTAD, Associate-2 purchased approximately 14 out-of-the-money Illumina call option contracts.

(Title 18, United States Code, Section 371.)

## COUNTS TWO AND THREE
(Securities Fraud)

The Grand Jury further charges:

41. The allegations contained in paragraphs 1 through 37 and 40 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

42. On or about the dates set forth below, in the Southern District of New York and elsewhere, DONALD BLAKSTAD, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities

exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, BLAKSTAD obtained material, nonpublic information about Illumina from Martha Patricia Bustos, in breach of her duties to Illumina, and BLAKSTAD, aware of this breach of duty, used that material, nonpublic information to execute and cause others to execute transactions in Illumina securities in advance of the following Illumina Announcements:

| Count | Illumina Announcement | Approximate Dates of Pre-Announcement Trading |
|---|---|---|
| 2 | October 10, 2016 | October 10, 2016 |
| 3 | August 1, 2017 | July 31-August 1, 2017 |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

15

**COUNT FOUR**
(Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

43. The allegations contained in paragraphs 1 through 37 and 40 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

44. From in or about 2016 through in or about 2018, in the Southern District of New York and elsewhere, DONALD BLAKSTAD, the defendant, Martha Patricia Bustos, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

45. It was a part and an object of the conspiracy that DONALD BLAKSTAD, the defendant, Martha Patricia Bustos, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

16

(Title 18, United States Code, Section 1349.)

### COUNT FIVE
(Wire Fraud)

The Grand Jury further charges:

46. The allegations contained in paragraphs 1 through 37 and 40 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

47. From in or about 2016 through in or about 2018, in the Southern District of New York and elsewhere, DONALD BLAKSTAD, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BLAKSTAD and others, including through the use of telephone calls, wire transfers, and electronic mail, schemed to defraud Illumina of confidential information regarding Illumina's financial condition for the purpose of executing transactions in Illumina securities.

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATION**

48. As a result of committing one or more of the offenses alleged in Counts One through Five of this Indictment, DONALD BLAKSTAD, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

**Substitute Assets Provision**

49. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____  
FOREPERSON

_____  
GEOFFREY S. BERMAN  
United States Attorney  
Southern District of New York

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

DONALD BLAKSTAD,

Defendant.

---

INDICTMENT

19 Cr. _____

(Title 15, United States Code,
Sections 78j(b) & 78ff; Title 17,
Code of Federal Regulations, Section
240.10b-5; and Title 18, United States
Code, Sections 371, 1343, 1349, & 2.)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

---

7/1/19  F/J *[illegible handwritten notation]*