

**MEISTER SEELIG & FEIN LLP**

125 Park Avenue, 7th Floor
New York, NY 10017
Telephone (212) 655-3500
Facsimile (212) 655-3535

Evan L. Lipton
*Partner*
Direct (212) 655-3517
Fax (212) 655-3535
*ell@msf-law.com*

August 13, 2020

<u>By ECF</u>

Hon. Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *United States v. Donald Blakstad*, 19 Cr. 486 (ER)

Dear Judge Ramos:

I write on behalf of Donald Blakstad to request a modification of the monetary conditions of his pretrial release.  Mr. Blakstad is currently subject to a $250,000 bond, secured by the signatures of three financially responsible people (all of whom are attorneys who have known Mr. Blakstad for decades), and by $20,000 cash that Mr. Blakstad deposited with the San Diego District Court when he was arrested on July 10, 2019.  I write today to respectfully request that the $20,000 cash security be removed from the bond and returned to Mr. Blakstad so that he may use it to pay for important, unexpected personal expenses, including home-care for his 92 year old mother, and ongoing legal fees related to his defense to the charges in the Indictment.

Mr. Blakstad is supervised by Pretrial Services officers in both New York and San Diego, where he resides; Pretrial Services in San Diego is responsible for Mr. Blakstad's direct supervision.  Both offices take no position on this application.  Officer Mari Chavez, in San Diego, however, confirmed that since his arrest, Mr. Blakstad has complied fully with his conditions of supervision.  The government (A.U.S.A. Imperatore) objects to the proposed modification.

By way of background, Mr. Blakstad was arrested in San Diego on July 10, 2019, and was released that same day on a $20,000 cash bond, and with a GPS monitoring device.  The GPS monitor was later removed by Pretrial Services in San Diego.  Almost a month later, on August 8, 2019 (ECF No. 12), Mr. Blakstad traveled to New York City for presentment and arraignment before Magistrate Judge Debra Freeman in this district.  Judge Freeman modified his conditions of release, imposing a $250,000 personal recognizance bond (this amount was agreed upon by the parties) to be signed by the defendant and three financially responsible

suretors.  The magistrate court declined, over objection of the government, to impose a GPS monitoring condition and instead required a curfew, to be determined by Pretrial Services. The $20,000 cash security remained in place, without objection.  Mr. Blakstad was given one-week to obtain the required signatures on his bond. The addition of the $250,000 personal recognizance bond was not based on a change in circumstances since Mr. Blakstad's arrest in San Diego; instead, it reflected a difference in bail practices between the S.D.N.Y. and S.D.Cal.

In the week following his arraignment in the S.D.N.Y., the United States Attorney's Office for the Southern District of New York interviewed and approved three suretors: Constantine Buzinus, Randall Steininger and Robert Knutson, each of whom demonstrated financial resources sufficient to cover the bond.  All three are attorneys.  And, each spoke of their close relationship to Mr. Blakstad.  Mr. Buzinus and Mr. Steininger have known Mr. Blakstad for over twenty years, and Mr. Knutson has been friends with Mr. Blakstad for more than forty years.

In the year since Mr. Blakstad's arrest, he has demonstrated compliance with the Court process, including repeatedly traveling cross country for court dates.  Plainly, he does not pose a risk of flight or non-appearance.  In any event, the signatures of his three close friends carry considerable moral suasion that assures the Court that Mr. Blakstad will continue to abide by his bail conditions. All three suretors clearly understand their financial obligations should Mr. Blakstad violate his bond terms.  Their willingness to risk their own financial security provides the Court with significant comfort that Mr. Blakstad can be relied upon to comply with the Court's orders.  Additional financial obligations are unnecessary to ensure Mr. Blakstad's continued appearance—this substantial moral suasion is sufficient.  *See, e.g., United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) ("The Court is entitled to have a moral as well as a financial assurance of the defendant's appearance in Court when required.  The function of bail is . . . to provide assurance of his reappearance after release on bail . . . . Bail is intended as a catalyst to aid the appearance of the defendant when wanted.") (quotation marks, citations and modifications omitted).

In this context, the $20,000 cash deposited with the court in San Diego, which represents but a small fraction of the total financial obligation imposed by the bond, does not meaningfully impact Mr. Blakstad's incentives to continue complying with his conditions of release.  The Court should grant Mr. Blakstad's bail modification, and release these funds. *See, e.g., United States v. Lyons*, No. 91 CR. 889 (CSH), 1991 WL 278954, at *2 (S.D.N.Y. Dec. 13, 1991) (the court explained, "I am prepared to modify Lyons' conditions of bail," to reduce the bail restrictions, based in part on the "[v]ery considerable moral suasion aris[ing] from the significant financial obligations of" the defendant's bail suretors, including "the defendant's mother.").

Moreover, this litigation, which has already been pending for over a year, is likely to continue for some time.  Trial is currently scheduled for November 2020, and may be adjourned further given the ongoing COVID-19 public health crisis.  The duration of the litigation, Mr. Blakstad's demonstrated compliance with his bail conditions, and the significant moral suasion afforded by his suretors warrant the modest modification requested here so that Mr. Blakstad can finance both his mother's critical healthcare needs, and his continued representation by his

counsel of choice.  *See, e.g, Luis v United States*, 136 S. Ct. 1083, 1089 (2016) ("Given the necessarily close working relationship between lawyer and client, the need for confidence, and the critical importance of trust, neither is it surprising that the Court has held that the Sixth Amendment grants a defendant a fair opportunity to secure counsel of his own choice.") (quotation marks and citations omitted).

I am, of course, available to provide any additional information the Court may require, and to be heard on this application at the Court's convenience.

Respectfully yours,

MEISTER SEELIG & FEIN LLP

/s/ELL

By: Evan L. Lipton

Cc:  Gov't Counsel; Pretrial Services Officers Chavez and Cunningham; Eugene Iredale (by email)