UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                   :
UNITED STATES OF AMERICA                           :
                                                   :
         - v. -                                    :     S1 19 Cr. 486 (ER)
                                                   :
DONALD BLAKSTAD,                                   :
                                                   :
                  Defendant.                       :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


## <u>THE GOVERNMENT'S REQUESTS TO CHARGE</u>

## INTRODUCTION

The Government respectfully submits its requests to charge the jury.

The proposed instructions on counts relating to insider reading are based principally on (a) the decision of the United States Court of Appeals for the Second Circuit in *United States* v. *Martoma*, 894 F.3d 64 (2d Cir. 2017) (as amended on June 25, 2018) (hereinafter "*Martoma* II") and the decision of the United States Supreme Court in *Salman* v. *United States*, 237 S. Ct. 420 (2016) (hereinafter "*Salman*"); (b) jury instructions given in recent insider trading cases, namely *United States* v. *Stewart*, S1 15 Cr. 287 (JSR) (S.D.N.Y. 2019) (hereinafter "*Stewart*"); *United States* v. *Pinto-Thomaz*, S2 18 Cr. 579 (JSR) (hereinafter "*Pinto-Thomaz*"); *United States* v. *Chow*, No. 17 Cr. 667 (GHW) (S.D.N.Y. 2018) (hereinafter "*Chow*"); *United States* v. *Blaszczak et al.*, No. S1 17 Cr. 357 (LAK) (S.D.N.Y. 2018) (hereinafter *"Blaszczak"*); *United States* v. *Walters*, No. S1 16 Cr. 338 (PKC) (S.D.N.Y. 2017) (hereinafter "*Walters*"); *United States* v. *Riley*, No. 13 Cr. 339 (VEC) (S.D.N.Y. 2014) (hereinafter ("*Riley*"); *United States* v. *Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. 2014) (hereinafter "*Martoma*"); *United States* v. *Steinberg*, No. 12 Cr. 121 (RJS) (S.D.N.Y. 2013) (hereinafter "*Steinberg*"); *United States* v. *Whitman*, No. 12 Cr. 125 (JSR) (S.D.N.Y. 2012) (hereinafter "*Whitman*"); *United States* v. *Gupta*, No. 11 Cr. 907 (JSR) (S.D.N.Y. 2012) (hereinafter "*Gupta*"); *United States* v. *Newman*, 773 F.3d 438 (2d Cir. 2014) (hereinafter "*Newman*"); and *United States* v. *Goffer et al.*, No. S1 10 Cr. 56 (RJS) (S.D.N.Y. 2011) (hereinafter "*Goffer*").

The proposed instructions on the remaining counts are based on the cases and treatises cited in those proposed instructions.

## TABLE OF CONTENTS

GENERAL INSTRUCTIONS ............................................................................................ 3
   The Court's Usual Instructions ................................................................................. 3
THE CHARGES ............................................................................................................... 4
   Summary of the Indictment ..................................................................................... 4
   Conspiracy and Substantive Counts ........................................................................ 6
   Securities Fraud ....................................................................................................... 8
      First Element: The Insider Trading Scheme ...................................................... 10
      Second Element: State of Mind .......................................................................... 16
      Third Element: Interstate Commerce .................................................................. 18
   Wire Fraud (Insider Trading) .................................................................................. 19
   Wire Fraud (Investment Fraud) .............................................................................. 21
      First Element: Existence of Scheme or Artifice to Defraud ............................... 23
      Second Element: Knowing Participation in Scheme with Intent to Defraud ........... 28
      Third Element: Use of Interstate Wires .............................................................. 32
   Aiding and Abetting ................................................................................................ 34
   Conspiracy to Commit Securities Fraud ................................................................. 37
   Conspiracy to Commit Wire Fraud ......................................................................... 42
   Conspiracy to Commit Wire Fraud and Securities Fraud ........................................ 44
   Conscious Avoidance .............................................................................................. 51
   Venue ....................................................................................................................... 53
   Variance in Dates and Amounts .............................................................................. 54
WITNESSES .................................................................................................................... 55
   Defendant's Testimony [or Defendant's Right Not to Testify] ............................... 55
   Preparation of Witnesses ......................................................................................... 56
   Law Enforcement and Government Employee Witnesses ........................................ 57
   Accomplice/Cooperating Witness Testimony ......................................................... 58
   Uncalled Witnesses – Equally Available ................................................................ 61
   Persons Not on Trial ................................................................................................ 62
   Expert Witnesses ..................................................................................................... 63
OTHER EVIDENCE ....................................................................................................... 64
   Summary Charts ...................................................................................................... 64
   Audio Recordings and Transcripts .......................................................................... 65
   Stipulations of Testimony ....................................................................................... 66
   Stipulations of Fact ................................................................................................. 67
   Particular Investigative Techniques Not Required .................................................. 68
   Use of Evidence Obtained Pursuant to Searches ..................................................... 69
   CONCLUSION ........................................................................................................ 70

## GENERAL INSTRUCTIONS

### REQUEST NO. 1

### The Court's Usual Instructions

The Government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.      Duties and Roles of the Court and Jury

b.      Presumption of Innocence and Burden of Proof

c.      Reasonable Doubt

d.      Direct and Circumstantial Evidence

e.      Witness Credibility

f.      Indictment not Evidence

g.      Statements of Court and Counsel not Evidence

h.      Government Treated Like Any Other Party

i.      Interest in Outcome

j.      Sympathy:  Oath as Jurors

k.      Punishment Is Not to Be Considered by the Jury

l.      Selection of Foreperson; Right to See Exhibits and Hear Testimony During Deliberations; Communications with the Court

m.      Verdict; Need for Unanimity; Duty to Consult

**THE CHARGES**

**REQUEST NO. 2**

**Summary of the Indictment**

The defendant, Donald Blakstad, has been formally charged in an Indictment.  The Indictment contains seven counts, or charges.  I will, at times, refer to each count by the number assigned to it in the Indictment.  You should know that there is no significance to the order of these numbers or the specific number of counts charged, and indeed my instructions will follow a different order than the order in which the various counts appear in the Indictment.  In your deliberations and in reaching your verdict, you must consider each count separately.  You must return a separate verdict as to each count.

The Indictment in this case is not evidence.  It merely describes the charges made against the defendant.  It is a set of accusations.  It may not be considered by you as evidence of the defendant's guilt.  Only the evidence or lack of evidence introduced at the trial in this case decides that issue.

The first five Counts in the Indictment relate to an alleged insider trading scheme.  In Count One of the Indictment, the defendant is charged with conspiring to commit securities fraud through insider trading in the securities of the biotechnology company Illumina, Inc., which I will refer to as "Illumina."  Count One is called a conspiracy count.  In Counts Two and Three, the defendant is charged with committing two substantive acts of securities fraud through insider trading.  In Count Four, the defendant is charged with conspiring to commit wire fraud through insider trading in Illumina securities.  In Count Five, the defendant is charged with committing the substantive crime of wire fraud through insider trading.

4

The other two Counts in the Indictment, Counts Six and Seven, relate to a separate but related investment fraud scheme, in which Blakstad is alleged to have made false and misleading representations to investor victims regarding how their investment funds would be utilized. In Count Six of the Indictment, the defendant is charged with conspiring to commit securities fraud and wire fraud. Finally, in Count Seven, the defendant is charged with committing the substantive crime of wire fraud.

In a few moments, I will instruct you on each of these charges in more detail, and I will explain the differences between the conspiracy counts in Counts One, Four, and Six versus the substantive counts in Counts Two, Three, Five, and Seven.

The order of these counts is irrelevant; indeed, I will use a different order in instructing you as to the elements of each charge. At the outset, however, let me instruct you that you must consider each individual charge separately, and evaluate each on the proof or lack of proof that relates to that charge.

> See *Blaszczak*; *Pinto-Thomaz*; *Stewart*; *Chow*; *Walters*; *Riley*;
> *Whitman*; *Gupta*.

## REQUEST NO. 3

### Conspiracy and Substantive Counts

As I have just described, there are certain counts in the Indictment that are conspiracy counts, while others are what are referred to as substantive counts.  Unlike the conspiracy charges, which allege agreements to commit certain offenses, the substantive counts are based on the actual commission of offenses, or aiding and abetting others to actually commit offenses.

A conspiracy to commit a crime is an entirely separate and different offense from the substantive crime that is the objective or goal of the conspiracy.  Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the objective of the conspiracy is not achieved.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

The essence of the crime of conspiracy is an agreement or understanding to violate other laws.  Thus, if a conspiracy or agreement to commit a crime exists, even if it fails, it is still punishable as a crime.  Consequently, in a conspiracy charge there is no need to prove that the crime that was the goal of the conspiracy was actually committed.

By contrast, the substantive counts require proof that the crime charged was actually committed, but do not require proof of an agreement.  Of course, if a defendant both participates in a conspiracy to commit a crime and then actually commits that crime, the defendant may be guilty of both the conspiracy and the substantive crime, as I will instruct you shortly.

We will turn first to the substantive charges in the Indictment, which are more convenient to consider before the conspiracy charges.

Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 19-2;
Hon. John M. Walker, Jr., Jury Charge, *United States* v. *Helmsley*,

6

No. 88 Cr. 219 (S.D.N.Y. 1989). *See also United States* v. *Labat*, 905 F.2d 18, 21 (2d Cir. 1990) ("Since the essence of conspiracy is the agreement and not the commission of the substantive offense that is its objective, the offense of conspiracy may be established even if the collaborators do not reach their goal.").

# REQUEST NO. 4

## <u>Securities Fraud</u>

Let us turn first to the two substantive securities fraud charges, which are listed in Counts Two and Three of the Indictment but which are more convenient to consider before the other counts in the Indictment.  Each of Counts Two and Three charges the defendant with engaging in insider trading by unlawfully obtaining material, nonpublic information about Illumina from Martha Patricia Bustos, and using that information to execute and cause others to execute transactions in Illumina securities.

Specifically, Count Two charges the defendant with unlawfully obtaining material, non-public information about Illumina from Bustos, which information Blakstad and his associates then used to purchase various Illumina securities in or about October 2016.

Count Three charges the defendant with unlawfully obtaining material, non-public information about Illumina from Bustos, which information Blakstad and his associates then used to purchase various Illumina securities in or about July and August 2017.

The Government, in order to convict the defendant on any of these substantive counts, must prove each of the following three elements beyond a reasonable doubt:

<u>First</u>, that in connection with the purchase or sale of securities, the defendant did <u>any one</u> or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

8

Second, the defendant acted knowingly, willfully, and with an intent to defraud; and

Third, that in furtherance of the fraudulent conduct, there occurred at least one use of any means or instrument of transportation or communication in interstate commerce, or the use of the mails, or the use of any facility of any national securities exchange.

I will say a few words about each of these elements as applied to specific charges in Counts Two and Three.  But please note that while the Indictment refers to various specific dates and amounts, the law only requires a substantial similarity between the dates and amounts alleged and those established by the evidence.

See Pinto-Thomaz; Stewart I; Chow; Walters; Riley; Goffer.

## REQUEST NO. 5

### Securities Fraud

### First Element: The Insider Trading Scheme

A few words about the first element.  A device, scheme, or artifice to defraud is merely a plan to accomplish a fraudulent objective. The specific device, scheme, or artifice to defraud, or act, practice, or course of business that the Government alleges the defendant employed in connection with Counts Two and Three is known as insider trading.

For purposes of these charges, an insider is a person who possesses material, nonpublic information about a publicly traded company by virtue of a relationship that involves a duty of trust and confidence. If a person has such inside information and her position of trust and confidence prohibits her from disclosing that information, the law forbids her from buying or selling the securities of the company in question *or* from passing that information on to others with the expectation that they will trade in such securities on the basis of that inside information. The law also prohibits a person who is not actually an insider from trading in securities based on material nonpublic information, or assisting others to trade on the basis of that information, if the person knows that the material, nonpublic information was intended to be kept confidential and was disclosed in violation of a duty of trust or confidence.

The Indictment alleges that the defendant's associate Martha Patricia Bustos was an insider — an employee of Illumina — who disclosed or "tipped" material, non-public information in breach of a duty of trust and confidence to the defendant, and that the defendant then in turn used the information to trade or cause others to trade in Illumina securities. Specifically, Counts Two and Three of the Indictment charge the defendant with engaging in

insider trading by obtaining material, non-public information from Bustos, and then trading or causing others to trade on that information.

In order to find that the Government has established the first element of Counts Two and Three, you must answer each of the following questions "yes" with respect to each of Counts Two and Three:

Did the Government prove, beyond a reasonable doubt:

One, that the defendant's associate Martha Patricia Bustos owed a duty of trust and confidence to Illumina;

Two, that Bustos violated that duty of trust and confidence by disclosing material non-public information to the defendant relating to Illumina;

Three, that Bustos anticipated that the defendant would use the material, non-public information to trade securities or to cause others to trade securities, and that the defendant did, in fact, trade or cause others to trade using the material, non-public information;

Four, that Bustos, in providing this information to the defendant, anticipated receiving a personal benefit of some kind in return; and

Five, that the defendant knew that Bustos disclosed the information in breach of a duty of trust and confidence and in anticipation of a personal benefit.

To answer the first question, concerning the existence of a relationship of trust and confidence, you must look to all of the facts and circumstances and ask whether both Bustos and Illumina recognized that their relationship involved trust and confidence.

As to the second question, regarding the disclosure of material, non-public information, information is material if a reasonable investor would consider it important in deciding whether

to buy, sell, or hold securities, and at what price to buy or sell the securities.  Materiality of the information is judged as of the time the information was disclosed.

Information is non-public if, at the time it was disclosed, it was not available to the public through such sources as press releases, trade publications, analysts' reports, newspapers, magazines, rumors, word of mouth or other similar sources.  In evaluating what information a company has treated as confidential, you may consider written company policies, contracts, measures the company has taken to guard the information's secrecy, the extent (if any) to which the information has already been disclosed to outsiders, and any other relevant facts and circumstances.  Confirmation by an insider of unconfirmed facts or rumors — even if reported in a newspaper or research report — may itself be inside information.  A tip from an insider that is more reliable and specific than unconfirmed facts or public rumors is non-public information despite the existence of such rumors in the media or investment community.  Whether or not the confirmation of a rumor by an insider qualifies as material, non-public information is for you as the jury to decide.

As to the third question, you must determine whether the Government has proven beyond a reasonable doubt that Bustos anticipated that the defendant would likely use or cause others to use the information to trade securities, and that the defendant then did so by trading the securities or by having others trade the securities.  Direct proof that Bustos anticipated that the defendant would likely use the information to trade, or cause others to trade, securities is not required. Bustos's knowledge may be established by circumstantial evidence.  Further, it is not necessary for the Government to prove that Bustos knew to a certainty that the defendant would use the information to trade or cause others to trade securities.  It is sufficient for the Government to prove that Bustos anticipated that the defendant would likely use the information to his

advantage by trading securities or causing others to do so.  Finally, you may conclude that a

trade was made "on the basis of the inside information" if the information was a factor in the

trading decision.  It need not have been the only factor.

With respect to the fourth question, you must determine whether Bustos anticipated

receiving a personal benefit in return for providing material non-public information to the

defendant.  "Personal benefit" is broadly defined to include not only direct or indirect monetary

gain, but also, the benefit one would obtain from simply making a gift of confidential

information to a relative or friend.  The benefit does not need to be financial or tangible in nature

and could also include (1) a reputational benefit that will translate into future earning, such as

enhanced status or prestige within a group, maintaining a useful networking contact, or simply

obtaining future financial or business benefits, or (2) a relationship between the insider and the

recipient that suggests a *quid pro quo* from the latter, or (3) the insider's intention is to benefit

the particular recipient of the material nonpublic information, for instance where the insider gifts

confidential information to a trading  friend and the insider intends to benefit the recipient.  An

insider who discloses information for a legitimate corporate purpose does not receive a personal

benefit, however.

Please note that the Government is not required to prove that Bustos received monetary

kickbacks to establish the requisite personal benefit.  The Government contends that Bustos

disclosed inside information to the defendant because of their friendship and with an intent to

benefit her friend, that is, the defendant, as well as because of tangible gifts or benefits that the

defendant provided to Bustos.  The defense argues that the Government has failed to prove this,

as well as other elements of the charges, beyond a reasonable doubt.   But, if you find that the

Government has proven beyond a reasonable doubt that Bustos intentionally disclosed inside

information to the defendant with the intent to benefit the defendant and that the defendant traded on that information or directed others to do so, then this would be sufficient to satisfy the "personal benefit" requirement.

I must caution you that an insider's mere disclosure of material, non-public information, standing alone and without more, does not establish this benefit factor. Even where a person has a duty of trust and confidence, meaning that she was required to keep information confidential, her breach of the duty is not fraudulent unless she discloses the information for personal ends and thus lacked a legitimate corporate purpose. While you need not be unanimous as to what particular benefits Bustos received or expected to receive as a result of her disclosures, you must all agree that Bustos received or expected to receive a benefit of some kind and that the reason was personal, rather than approved by, or a corporate purpose on behalf of, Illumina.

Finally, you must determine whether the Government has proven that the defendant knew that the information disclosed to him was done in breach of a duty of trust and confidence and for personal benefit. As to the defendant's knowledge that the insider has breached the insider's duty of trust and confidentiality in return for some actual or anticipated benefit, it is not necessary that the defendant knew the specific confidentiality rules of Illumina or the specific benefit given to or anticipated by Bustos in return for disclosure of inside information; rather, it is sufficient that the defendant had a general understanding that an insider was improperly disclosing inside information for personal benefit rather than for corporate purposes.

As I indicated earlier, the Government must establish each of these factors beyond a reasonable doubt in order for you to determine that the Government has sustained its burden of proof as to the first element on each of Counts Two and Three. If so, you must find the defendant guilty as to that Count. If, however, the Government has not established that factor

14

beyond a reasonable doubt, then you must find that the Government did not satisfy its burden of proof, and you must return a verdict of not guilty as to that count.

> *See Pinto-Thomaz*; *Stewart* I; *Blaszczak*; *Walters*; *Stewart*; *Riley*; *Goffer*.

## REQUEST NO. 6

### Securities Fraud

### Second Element: State of Mind

The second element of the substantive securities fraud charges in Count Two and Three relates to the defendant's state of mind.  If you find that the Government has met its burden of proving that the defendant engaged in the charged scheme — that is, the factor I just explained — the Government must then prove beyond a reasonable doubt that the defendant engaged in the scheme knowingly, willfully, and with an intent to defraud.  To act knowingly means to act intentionally, deliberately, and voluntarily, rather than by mistake, accident, ignorance, or carelessness.  To act willfully means to act deliberately and with a purpose to do something that the law forbids.  However, to show that the defendant acted willfully, the Government does not need to prove that the defendant knew he was breaking any particular law; rather, it is sufficient in this context for the Government to prove that the defendant was aware of the generally illegal nature of his acts.  Intent to defraud in the context of this alleged insider trading scheme means to act with the intent to receive or disclose confidential information obtained from Illumina without the company's knowledge or approval.

Whether the defendant acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question.  Direct proof of knowledge and intent to deceive is not required.  Knowledge and criminal intent may, like any other fact, be established by circumstantial evidence.  Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you do have before you evidence of certain actions and statements by the defendant.  The Government contends that these actions and statements show beyond a reasonable doubt knowledge on the part of the

16

defendant of the unlawful purposes of his actions. On the other hand, the defendant denies either that these acts and statements occurred or that they show that he had such knowledge and intent. It is for you to determine whether the Government has established beyond a reasonable doubt that such knowledge and intent on the part of the defendant existed.

Please note that if the defendant honestly believed in good faith that the information he obtained from Bustos was not information Bustos was required by Illumina to keep confidential, or believed that the information would not be used to trade securities, then such good faith would be a complete defense to all of the charges here.  However, the defendant does not bear the burden of proving his good faith; it remains at all times the Government's burden to prove, beyond a reasonable doubt, that the defendant acted knowingly, willfully, and with intent to defraud.

*See Blaszczak: Pinto-Thomaz*; *Stewart* I; *Chow*; *Walters*; *Riley*.

**REQUEST NO. 7**

**Securities Fraud**

**Third Element: Interstate Commerce**

With respect to Counts Two and Three of the Indictment, the third and final element that the Government must prove beyond a reasonable doubt is that the disclosure of material, non-public information or trading based on that information involved the use of some instrumentality of interstate commerce, such as an interstate telephone call or email, use of the mails, or use of a facility of a national securities exchange, such as a stock or options trade made on the NASDAQ. The defendant himself does not have to have made the interstate call, or sent the mailing, or made the trade on the stock exchange; anyone can do it as long as it furthers the insider trading scheme.

As to each Count alleged in Counts Two and Three, if you find that the Government has failed to prove any element of any count beyond a reasonable doubt, then you must find the defendant not guilty of that count.  On the other hand, if you find that the Government has proven each element, beyond a reasonable doubt, then you must find the defendant guilty of that count.

*See Pinto-Thomaz*; *Stewart* I; *Chow*; *Walters*; *Riley*.

## REQUEST NO. 8

### Wire Fraud (Insider Trading)

Count Five of the Indictment charges the defendant with a substantive count of the crime of wire fraud through insider trading.  Specifically:

Count Five charges that, from in or about 2016 through in or about 2018, the defendant participated in a scheme to defraud Illumina of confidential information by obtaining that confidential information and then converting it to his own use using interstate wires (for example, through the use of telephone calls, text messages, email communications, or electronic trades of securities) for the purpose of executing securities transactions in Illumina.

For this count, the Government must prove the following three elements:

First, the defendant employed a scheme or artifice to defraud or obtained money or property by false pretenses, representations or promises;

Second, the defendant acted knowingly and willfully, with knowledge of the fraudulent nature of the scheme and with specific intent to defraud; and

Third, in the execution of the scheme, the defendant used, or caused to be used, interstate wires.

First, a scheme or artifice to defraud is merely a plan to accomplish a fraudulent objective. For purposes of the wire fraud statute, depriving another of money or property by means of false or fraudulent pretenses, representations, or promises includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or property entrusted to one's care by another. I explained in the context of securities fraud what it means to act knowingly and willfully, and that earlier explanation applies here. To prove that the defendant acted with specific intent to defraud, the Government must prove that he acted with the intent to deprive Illumina of something of value—for example, material, non-public

19

information—by trading on the basis of that information or converting it to use his own use by tipping others with that information for use in their trading.  In this context, "material" means simply that the information was important to Illumina.  "Non-public" has the same meaning as I previously stated.  Finally, these counts must involve the use of the interstate or international wires (for example, phone calls, text messages, email communications, or electronic trades) in furtherance of the scheme to defraud.

> See Walters; Stewart; United States v. Fleishman, No. 11 Cr. 32
> (JSR), Docket Entry No. 129 (Jury Instruction), at 17; Carpenter v.
> United States, 484 U.S. 19, 25 (1987) (intent to defraud in context of
> mail fraud charge in insider trading case); United States v. Rios, No.
> 91 Cr. 94 (LBS) (S.D.N.Y. 1992); United States v. Yip, 930 F.2d 142,
> 146 (2d Cir. 1991).

## REQUEST NO. 9

### Wire Fraud (Investment Fraud)

Count Seven of the Indictment charges the defendant with a substantive count of the crime of wire fraud relating to the investment fraud scheme that I mentioned earlier. Specifically:

Count Seven charges that, from in or about 2015 through in or about 2019, the defendant participated in a scheme to defraud investors, including by making false and misleading representations to investor victims, and subsequently misappropriating investor funds for his own use and the use of others, using interstate wires.

For this count, the Government must prove the same three elements that I discussed above in the context of Count Five, which alleged the defendant committed wire fraud through insider trading:

<u>First</u>, the defendant employed a scheme or artifice to defraud or obtained money or property by false pretenses, representations or promises;

<u>Second</u>, the defendant acted knowingly and willfully, with knowledge of the fraudulent nature of the scheme and with specific intent to defraud; and

<u>Third</u>, in the execution of the scheme, the defendant used, or caused to be used, interstate wires.

However, let me provide some additional instructions about how these elements of wire fraud apply in the context of an alleged investment fraud scheme, as opposed to an alleged insider trading scheme.

> *See Walters*; *Stewart*; *United States* v. *Fleishman*, No. 11 Cr. 32
> (JSR), Docket Entry No. 129 (Jury Instruction), at 17; *Carpenter* v.
> *United States*, 484 U.S. 19, 25 (1987) (intent to defraud in context
> of mail fraud charge in insider trading case); *United States* v. *Rios*,

No. 91 Cr. 94 (LBS) (S.D.N.Y. 1992); *United States* v. *Yip*, 930
F.2d 142, 146 (2d Cir. 1991).

**REQUEST NO. 10**

**Wire Fraud (Investment Fraud)**

**First Element: Existence of Scheme or Artifice to Defraud**

The first element of Count Seven that the Government must prove beyond a reasonable doubt is the existence of a scheme or artifice to defraud others of money or property by means of false or fraudulent pretenses, representations, or promises.

A "scheme or artifice" is simply a plan for the accomplishment of an object. "Fraud" is a general term. It is a term that includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestion, false pretenses, or concealment of the truth. The unfair advantage sought can involve money, property, or any other thing of value.

Thus, a "scheme to defraud" is any plan, device, or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises. It is a plan to deprive another of money or property by trick, deceit, deception, swindle, or overreaching.

In order to establish a scheme to defraud, the Government need not show that the defendant made a misrepresentation. A scheme to defraud can exist even if the scheme did not progress to the point where misrepresentations would be made. In addition, even if you find that the statements the Government contends were made or contemplated by the defendant in furtherance of the scheme were literally true, you can still find that the first element of the wire fraud statute has been satisfied if the statements and/or conduct of the defendant were deceptive. You may also find the existence of such a scheme if you find that the defendant conducted

23

himself in a manner that departed from traditional notions of fundamental honesty and fair play in the general business life of society.

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

A "pretense, representation, or statement" is fraudulent if it was made falsely and with intent to deceive. A statement may also be fraudulent if it contains half-truths or if it conceals material facts in a manner that makes what is said or represented deliberately misleading or deceptive.

The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed to make such disclosure with the intent to defraud.

**"Material Fact"**

If you find that the Government has established beyond a reasonable doubt that a statement was false or a statement was omitted rendering the statements that were made misleading, you must next determine whether the statement or omission was material under the circumstances. The word "material" here refers to the nature of the false or misleading statements. We use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance. Matters that are "material" may also include fraudulent half-truths or omissions of material fact. A material fact is one that a reasonable person would have considered important in making his or her investment decision. That means that if you find a particular statement of fact or omission to have been untruthful or misleading, before you can find that statement or omission to be material, you must also find that the

statement or omission was one that would have mattered to a reasonable person in making their decision.

In considering whether a statement or omission was material, let me caution you that it is not a defense if the material misrepresentation or omission would not have deceived a person of ordinary intelligence. Once you find that the offense involved the making of material misrepresentations or omissions of material facts, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the law protects the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was or would have been successful, or whether the defendant profited or would have profited as a result of the alleged scheme. Success is not an element of the offense. If, however, you find that the defendant expected to or did profit from the alleged scheme, you may consider that in relation to the element of intent, which I will discuss in a moment.

**Money or Property**

In order to satisfy this first element, the Government must also prove that the alleged scheme contemplated depriving another of money or property. It is not necessary for the Government to establish that the defendant actually realized any gain from the scheme or that any particular person actually suffered any loss as a consequence of the fraudulent scheme. You must concentrate on whether there was such a scheme, not on the consequences of the scheme.

In this regard, a person is not deprived of money or property only when someone directly takes his money or property from him. Rather, a person is also deprived of money or property when important, potentially valuable economic information is withheld from that person or when that person is provided false or fraudulent information of that nature that, if believed, would

prevent him from being able to make informed economic decisions about what to do with his

money or property.  In other words, a person is deprived of money or property when he is

deprived of the right to control that money or property.  Again, the Government need not show

that any victim investor lost money or property as a result of the scheme.  Such a loss must,

however, have been contemplated by the defendant.  To put it another way, it is not necessary

that a defendant have intended that his misrepresentations or omissions would cause an actual

loss; it is sufficient that a defendant intended that the misrepresentations or omissions would

induce the victim to enter into the transaction without the relevant facts necessary to make an

informed economic decision.

　　　If you find that the Government has sustained its burden of proof that a scheme to

defraud did exist, as charged, you next should consider the second element.

> Adapted from Sand, et al., *Modern Federal Jury Instructions*, Instr.
> 44-4 (based on the charge of the Honorable Edward Seinfeld in
> *United States v. Ranney*, 82 Cr. 771 (S.D.N.Y. 1983)); the charge
> of the Honorable Michael B. Mukasey in *United States v. Uccio*,
> 88 Cr. 906 (S.D.N.Y. 1989), aff'd, 917 F.2d 80 (1990); and the
> charge of the Honorable Charles S. Haight, Jr. in *United States v.
> Rogers*, 90 Cr. 377 (S.D.N.Y. 1991); *see United States v. Binday*,
> 804 F.3d 558, 579 (2d Cir. 2015) (holding that "it is not necessary
> that a defendant intend that his misrepresentation actually inflict a
> financial loss—it suffices that a defendant intend that his
> misrepresentations induce a counterparty to enter a transaction
> without the relevant facts necessary to make an informed economic
> decision");  *United States v. Tagliaferri*, No. 15-536, 2015 WL
> 2342712, at *4 (2d Cir. May 4, 2016) (wire fraud does not require
> actual financial loss; it is sufficient if the victim was "deprived of
> potentially valuable economic information, such as where the
> deceit affected the victim's economic calculus or exposed the
> victim to unexpected economic risk") (internal quotations and
> citations omitted);  *United States v. DiNome*, 86 F.3d 277, 284 (2d
> Cir. 1996) (definition of property includes the right to control the
> use of one's assets; where defendant intends to deprive victim of
> information material to victim's decision on how to deal with his
> assets, required intent to defraud is present); *see United States v.
> Trapilo*, 130 F.3d 547, 550 n.3 (2d Cir. 1997) (interpreting wire

fraud statute; "The term 'scheme to defraud' is measured by a 'nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society. . . . The scheme exists although no misrepresentation of fact is made'") (citations omitted).  *See also United States v. Finazzo*, 850 F.3d 94, 112 (2d Cir. 2017).

## REQUEST NO. 11

### Wire Fraud (Investment Fraud)

### Second Element: Knowing Participation in Scheme with Intent to Defraud

The second element of wire fraud that the Government must establish beyond a reasonable doubt is that the defendant devised or participated in the fraudulent scheme knowingly, willfully, and with the specific intent to defraud.

The words "devised" and "participated" are words that you are familiar with and, therefore, I do not need to spend much time defining them for you. To "devise" a scheme to defraud is to concoct or plan it. To "participate" in a scheme to defraud means to associate oneself with it with a view and intent toward making it succeed. While a mere onlooker is not a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and visibly executes the scheme to defraud.

In order to satisfy this element, it is not necessary for the Government to establish that the defendant originated the scheme to defraud. It is sufficient if you find that a scheme to defraud existed, even if originated by another, and that the defendant, while aware of the scheme's existence, knowingly participated in it.

It is also not required that the defendant participated in or have knowledge of all of the operations of the scheme. The guilt of the defendant is not governed by the extent of his participation.

It also is not necessary that the defendant participated in the alleged scheme from the beginning. A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily all of its details, and intentionally acts in a way to further the

unlawful goals, becomes a member of the scheme and is legally responsible for all that may have been done in the past in furtherance of the criminal objective and all that is done thereafter.

Even if the defendant participated in the scheme to a lesser degree than others, he is nevertheless equally guilty, so long as that defendant became a member of the scheme to defraud with knowledge of its general scope and purpose. As I have previously noted, before the defendant may be convicted of the fraud charged here, he must also be shown to have acted knowingly and willfully and with a specific intent to defraud.

I have previously defined the terms "knowingly" and "willfully," and you are to follow those instructions here.

An individual acts with specific intent to defraud if he engages or participates in a fraudulent scheme with some realization of its fraudulent or deceptive character and with an intention to be involved in the scheme to defraud and to help it succeed with a purpose of causing harm to the victim. The Government need not prove that the intended victims were actually harmed; only that such harm was contemplated. Actors are presumed to intend the natural and probable consequences of their actions. So when the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself.

The question of whether a person acted knowingly, willfully, and with specific intent to defraud is a question of fact for you to determine, like any other fact question. This question involves one's state of mind. As I instructed you earlier, direct proof is not required to establish the defendant's state of mind. You may rely on circumstantial evidence to establish the defendant's state of mind.

At this point, let me advise you that since an essential element of the crime charged is intent to defraud, it follows that "good faith," as I will define that term, on the part of a defendant

is a complete defense to a charge of wire fraud.  A defendant has no burden to establish a defense of good faith.  The burden is on the Government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.  Under the anti-fraud statutes, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent.  An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.

In considering whether or not a defendant acted in good faith, however, you are instructed that a belief by a defendant, if such belief existed, that ultimately everything would work out so that no investors would lose any money or that particular investments would ultimately be financially advantageous for clients does not necessarily constitute good faith. No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by him.

As a practical matter, then, to prove the charge against the defendant, the Government must establish beyond a reasonable doubt that the defendant knew that his conduct was calculated to deceive and that he nevertheless associated himself with the alleged fraudulent scheme.

The Government may prove that the defendant acted knowingly in either of two ways: First, it is sufficient, of course, if the evidence satisfies you beyond a reasonable doubt that the defendant was actually aware that he was making or causing a false statement to be made, or omitting, or causing to be omitted, a material fact.  Second, the defendant's knowledge may be established by proof that the defendant was aware of a high probability that the statement was false, or that a material fact was omitted unless, despite this high probability, the facts show that the defendant actually believed the statement to be true or that the material fact was not omitted.

This concept is known as conscious avoidance, and I will explain it more fully later in these instructions.

> Adapted from the charge of the Honorable J. Paul Oetken in
> *United States v. Middendorf*, 18 Cr. 36 (S.D.N.Y. 2019) and Sand,
> et al., *Modern Federal Jury Instructions*, Instr. 44-5.

## REQUEST NO. 12

### Wire Fraud (Investment Fraud)

### Third Element: Use of Interstate Wires

The third and final element that the Government must establish beyond a reasonable doubt as to the wire fraud count is that interstate or foreign wire facilities were used in furtherance of the scheme to defraud.

The "interstate" or "foreign" requirement means that the wire must pass between two or more states as, for example, a transmission of computer signals between New York and another state, such as California, or between the United States and another country.  A wire could include, for example, a telephone call, text message, email, or wire transfer of money.

It is not necessary for the defendant to be directly or personally involved in any wire communication, as long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it would be sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others; and this does not mean that the defendant himself must have specifically authorized others to execute a wire communication. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.  Incidentally, this wire requirement is satisfied even if the wire was done by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud.

The use of the wire need not itself be fraudulent.  Stated another way, the wire communication need not contain any fraudulent representation, or even any request for money. It is sufficient if the wires were used to further or assist in carrying out the scheme to defraud.

Let me also add the following: only the wire must be reasonably foreseeable, not its interstate or foreign component.  Thus, if you find that the wire was reasonably foreseeable, and the interstate or foreign wire actually took place, then this element is satisfied even if it was not foreseeable that the wire would cross state or national lines.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 44-7 (based on the charge of the Honorable Edward Weinfeld in *United States v. Ranney*, 82 Cr. 771 (S.D.N.Y. 1983)); and the charge of the Honorable Ronnie Abrams in *United States v. Tagliaferri*, 13 Cr. 115 (S.D.N.Y. 2014); the charge of the Honorable Michael B. Mukasey in *United States v. Uccio*, 88 Cr. 906 (S.D.N.Y. 1989), aff'd, 917 F.2d 80 (2d Cir. 1990); the charge of the Honorable Charles S. Haight, Jr. in *United States v. Rogers*, 90 Cr. 377 (S.D.N.Y. 1991); and the charge of the Honorable John G. Koeltl, *United States v. Szur*, S5 97 Cr. 108 (S.D.N.Y. 1998); *Pereira v. United States*, 347 U.S. 1, 8-9 (1954) (defendant "causes" mailing so long as he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such can reasonably be foreseen."); *United States v. Keats*, 937 F.2d 58 (2d Cir.) (defendant need not have personally sent charged wire communication; affirming conviction where Government agent and informant initiated charged telephone calls), *cert. denied*, 502 U.S. 950 (1991); *United States v. Bortnovsky*, 879 F.2d 30, 36-41 (2d Cir. 1989) (extended discussion of "in furtherance" requirement in mail fraud case; holding that letter mailed two years after fraud by innocent third party was "reasonably foreseeable" and "in furtherance" of fraud); *United States v. Blackmon*, 839 F.2d 900, 907-08 (2d Cir. 1988) (regarding foreseeability of interstate nature of communication); *United States v. Muni*, 668 F.2d 87, 89-91 (2d Cir. 1981) (extended discussion of "foreseeability" of wire communication); *Schmuck v. United States*, 489 U.S. 705 (1989); *United States v. Paccione*, 949 F.2d 1183, 1196 (2d Cir. 1991), *cert. denied*, 112 S. Ct. 3029 (1992); *United States v. Keats*, 937 F.2d 58, 64 (2d Cir.).

## REQUEST NO. 13

### Aiding and Abetting

Now, in addition to charging the defendant with substantive counts of securities fraud and wire fraud, all of the substantive counts I have instructed you on today also charge the defendant with what is called aiding and abetting. As a result, there is an additional way that the Government may establish the defendant's guilt on the substantive counts charged in the Indictment, and that is through aiding and abetting.

Aiding and abetting a crime is one manner of committing that crime. A defendant can be convicted of committing a crime if he helps someone else to commit the crime. For example, if the Government proves beyond a reasonable doubt that the defendant committed the substantive securities fraud alleged in Count Two, then you need not consider aiding and abetting with respect to that count. If, however, you find that the Government did not prove beyond a reasonable doubt that the defendant engaged in the securities fraud charged in Count Two, to continue using that count as an example, you should consider whether the Government has nonetheless proved beyond a reasonable doubt that the defendant aided and abetted someone else in the commission of securities fraud as alleged in that count. And again, while I have used Count Two as an example, this concept of aiding and abetting is alleged in all of the substantive counts charged in the Indictment, that is, in Counts Two, Three, Five, and Seven.

Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense is punishable as a principal. A person who aids and abets another to commit a substantive crime is just as guilty of that crime as if he had personally committed it. You may thus find the defendant guilty if you find beyond a reasonable doubt that the Government has proven that someone committed the substantive offense, and that the defendant helped or assisted that person in the commission of the offense.

The first requirement of aiding and abetting liability is that somebody else has committed the crime at issue.  The defendant cannot be convicted of aiding and abetting if nobody committed the underlying crime.  But if you do find that the underlying crime at issue was committed by someone other than the defendant, you should consider whether the defendant aided or abetted the person who actually committed the securities fraud or wire fraud.

To aid and abet another to commit a crime, the defendant must have willfully and knowingly associated himself in some way with the crime, and he must have willfully and knowingly sought by some act to help make the crime succeed.  In the aiding and abetting context, participation in a crime is willful if action is taken voluntarily and intentionally.

The mere presence of the defendant in a place where a crime is being committed, even coupled with knowledge that a crime is being committed, is not enough to make him an aider and abettor.  A defendant's acquiescence in the criminal conduct of others, even with guilty knowledge, is not enough to establish aiding and abetting.  An aider and abettor must have his own affirmative interest in the criminal venture.

To determine whether the defendant aided and abetted the commission of the crime, ask yourself these questions:

Did someone other than the defendant commit the crime at issue?

Did the defendant participate in the crime charged as something that he wished to bring about?

Did he associate himself with the attempt to commit the crime by other people knowingly and willfully?

Did he seek by his actions to make their criminal venture succeed?

35

If so, the defendant is an aider and abettor, and therefore he is guilty of the offense under consideration.  If not, then he is not an aider and abettor, and he is not guilty as an aider and abettor of that offense.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 11-2, and Hon. Colleen McMahon, Jury Charge, *United States* v. *Louis Cherico*, 08 Cr. 786 (S.D.N.Y. 2011).

## REQUEST NO. 14

### Conspiracy to Commit Securities Fraud

I have just instructed you on the substantive offenses alleged in the indictment.  Let me now turn to the conspiracy offenses.

Count One charges the defendant with conspiring, or agreeing, with others to commit securities fraud through insider trading — one of the crimes I have previously described to you. Conspiracy is an entirely distinct and separate offense from substantive securities fraud.  In order to sustain its burden of proof with respect to the conspiracy charge in Count One, the Government must prove beyond a reasonable doubt each of the following three elements:

First, that the charged conspiracy existed;

Second, that the defendant intentionally joined and participated in the conspiracy during the applicable time period; and

Third, that at least one of the co-conspirators committed an overt act in furtherance of the conspiracy.

The first element is simply the existence of a conspiracy.  A conspiracy is an agreement, or an understanding, by two or more persons to accomplish one or more illegal goals by working together.  For Count One, the Government alleges that the illegal goal of the conspiracy was trading securities on the basis of material, non-public information regarding Illumina. Specifically, the defendant is charged in Count One with participating in a conspiracy to undertake an insider trading scheme that would if successful meet the essential elements of insider trading through substantive securities fraud as I have already explained them to you in my instructions for the substantive charges in Counts Two and Three.

37

To prove that a conspiracy exists, the Government must prove that two or more people explicitly or implicitly came to an understanding to achieve the specified objective.  In order for the Government to satisfy this element, the Government does not have to prove that the alleged members of the conspiracy met together and entered into any express or formal agreement.  Similarly, the Government need not prove that the alleged conspirators stated, orally or in writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.  What the Government must prove is that there was a mutual understanding, either spoken or unspoken, between at least two people to cooperate with each other to accomplish the illegal goals of the conspiracy alleged in Count One.

The Indictment charges that this conspiracy lasted from approximately 2016 to 2018.  It is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged, but only that it existed for some period within that time frame.

If you conclude that the Government has proven beyond a reasonable doubt that the charged conspiracy existed, you must then consider whether the Government has proven, beyond a reasonable doubt, that the defendant intentionally joined the conspiracy, either at the outset or at some later point.  To prove this element, the Government must prove beyond a reasonable doubt that the defendant knowingly and willfully joined the conspiracy as I have previously described those terms to you, for the purpose of furthering its unlawful goals.

As I have already instructed you, knowingly means to act intentionally and voluntarily, rather than by mistake or accident or carelessness, and willfully means to act deliberately and with a purpose to do something that the law forbids.  It is not necessary that the defendant be fully informed of all the details of the conspiracy, or all of its participants.  He need know only

one other member of the conspiracy and need know only one of its objectives.  He can join the

conspiracy at any point and need not have received any benefit in return, so long as he in fact

participated in the conspiracy in the manner I have explained.  On the other hand, mere

association between the defendant and a conspirator does not make the defendant a member of

the conspiracy, even if he knows that the conspiracy exists.  In other words, knowledge and

association are not enough; the defendant must have intentionally participated in the conspiracy

with the purpose of helping to achieve at least one of the unlawful objectives.

The third element that the Government must prove, beyond a reasonable doubt, is that

some member of the conspiracy, not necessarily the defendant, knowingly committed at least one

overt act in furtherance of the conspiracy.  An overt act can be any act of any kind taken toward

effectuating the conspiracy in any respect.  An overt act, itself, need not be a criminal act, but it

must contribute to one or more of the goals of the conspiracy.  The overt act requirement may be

met, even if the conspiracy never actually accomplishes its goals.  Thus, for example, if two

persons conspire to commit a fraud and one of them makes a telephone call to get the fraud

going, the overt act requirement is met even if the fraud is never otherwise carried out.

In sum, if you find the Government proved, beyond a reasonable doubt, that the

conspiracy charged in Count One existed, that the defendant joined it, and that at least one overt

act was committed in furtherance of the conspiracy, then you should find the defendant guilty of

Count One.  On the other hand, if you find that the Government has not proved, beyond a

reasonable doubt, any of those essential elements, then you must find the defendant not guilty of

Count One.

**Personal Benefit**

I would like to provide you some additional instruction on the "personal benefit" requirement for committing securities fraud through insider trading as they apply to the conspiracy charged in Count One.

I instructed you earlier on the "personal benefit" requirement for committing the substantive offense of securities fraud through insider trading, and how you may only find the defendant guilty on Counts Two and Three if you find that Bustos anticipated receiving a personal benefit in return for providing material non-public information to the defendant. That is because the alleged unlawful conduct at issue in Counts Two and Three allegedly involved Bustos serving as the "tipper" who provided the inside information and the defendant serving as the "tippee" who received the information and then arranged for others to trade Illumina securities on the defendant's behalf.

The conspiracy alleged in Count One encompasses two kinds of trading activity. First, the charged conspiracy includes the same trading activity charged in Counts Two and Three, in which Blakstad allegedly traded on inside information in Illumina by arranging for others to do so on his behalf. Second, the charged conspiracy includes instances in which Blakstad allegedly received inside information from Bustos and then tipped his associates, so that his associates could trade in Illumina securities on their own behalf.

As to this second kind of trading activity, for the defendant to be guilty of insider trading as a tipper of inside information to an associate, you must find that the defendant anticipated receiving a personal benefit from another person in return for providing material non-public information to that person, who then traded on the inside information or directed others to do on their behalf. However, you need not find that the defendant acted as both a tippee and a tipper

40

to find him guilty on Count One; you may find him guilty on Count One solely based on his role as a tippee if you find that all of the elements of the offense have been established beyond a reasonable doubt.  In other words, while the conspiracy charged in Count One encompasses two different types of trading activity, the first category of trading that I described—Bustos tipping to Blakstad, who then arranged for others to trade  his behalf—can by itself serve as a basis for liability on Count One.

> See *Pinto-Thomaz*; *Stewart* I; *Chow*; *Riley*; *Whitman*; *Gupta*; Sand,
> *Modern Federal Jury Instructions*, Intr. 19-4 (for jury instruction
> on existence of conspiratorial agreement).

## REQUEST NO. 15

### Conspiracy to Commit Wire Fraud

Count Four charges the defendant with conspiring to commit wire fraud through insider trading. For this count, the Government must prove beyond a reasonable doubt two elements:

First, that the charged conspiracy existed;

Second, that the defendant unlawfully, knowingly and intentionally joined and participated in this conspiracy during the applicable time period.

As you will recognize, these are basically the same elements about which I instructed you with respect to Count One. My prior instructions about the elements of Count One apply equally here, except the Government does not have to prove that any overt act was taken in furtherance of the conspiracy charged in Count Four.

The other difference between this count and Count One is the goal of the conspiracy charged: Here, the object alleged is wire fraud, as opposed to securities fraud. Specifically, the wire fraud scheme that is alleged to be an object of the conspiracy charged in Count Four is the use of the interstate or international wires (for example, through phone calls, email communications, wire transfers of money, or electronic trades) in furtherance of a scheme to defraud Illumina of confidential information. By contrast, the securities fraud scheme that is alleged to be the object of the conspiracy charged in Count One is the defrauding of Illumina confidential information, and converting that information to the defendant's own use in connection with the purchase or sale of securities.

I explained the elements of each of these objects earlier, when I talked about them as substantive offenses. Specifically, I explained earlier what it means to employ a device, scheme, or artifice to defraud, and to act knowingly and willfully. Those earlier explanations apply here.

To prove that the defendant conspired to act with specific intent to defraud, the Government must prove that he agreed to act with the intent to deprive Illumina of something of value—for example, material, non-public information. In this context, "material" means simply that the information was important to Illumina.

Again, it is not necessary for you to find that the agreement was ever expressed orally or in writing, but the Government does have to prove that there was a mutual understanding between at least two people.

The indictment charges that the conspiracy lasted from in or about 2016 through in or about 2018.  It is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged, but only that it existed for some period within that time frame.

If you conclude that the Government has proven beyond a reasonable doubt that the charged conspiracy existed, you must then consider whether the Government has proven, beyond a reasonable doubt, that the defendant intentionally joined the conspiracy, either at the outset or at some later point. To prove this element, the Government must prove beyond a reasonable doubt that the defendant knowingly and willfully joined the conspiracy for the purpose of furthering its unlawful object.

> *See United States* v. *Fleishman*, 11 Cr. 32 (JSR), Docket Entry No. 129 (Jury Instruction), at 17; *Carpenter* v. *United States*, 484 U.S. 19, 25 (1987) (intent to defraud in context of mail fraud charge in insider trading case); *see also United States* v. *Yip*, 930 F.2d 142, 146 (2d Cir. 1991); *United States* v. *Rios*, 91 Cr. 94 (LBS) (S.D.N.Y. 1992).

## REQUEST NO. 16

### Conspiracy to Commit Wire Fraud and Securities Fraud

Count Six charges the defendant with conspiring to commit securities and wire fraud through the alleged investment fraud scheme I have already described.  For this count, the Government must prove beyond a reasonable the three elements of conspiracy that I described with respect to Count One, including the overt act requirement.  Thus, of the three conspiracy counts charged in this case, two of them (Count One and Count Six) require proof of an overt act taken in furtherance of the conspiracy, while the other conspiracy charge (Count Four) does not require proof of an overt act.

Also, in contrast to the other conspiracy counts in this case, the conspiracy alleged in Count Six has two objects instead of just one object: both wire fraud and securities fraud are alleged as goals of the conspiracy.  Specifically, the wire fraud scheme that is alleged to be an object of the conspiracy charged in Count Six is the use of the interstate or international wires (for example, through phone calls, text messages, email communications, or wire transfers of money) in furtherance of a scheme to defraud investors.  The securities fraud scheme that is alleged to be an object of the conspiracy charged in Count Six is the defrauding of investors in those entities in connection with the purchase or sale of securities.

I instruct you that where, as with Count Six, a particular conspiracy charge alleges more than one object, finding one unlawful objective is sufficient to satisfy the illegal purpose element, but you must unanimously agree on which object or objects, if any, was the specific object or objects of the alleged conspiracy. You may find that there was more than one illegal object of a particular conspiracy, but you must agree unanimously as to each such object.  If the Government fails to prove beyond a reasonable doubt that at least one of the objects alleged in

the conspiracy charge that you are considering was in fact an objective of the conspiracy, you must find the defendant not guilty as to the conspiracy charge you are considering.

The indictment charges that the conspiracy lasted from approximately 2015 to 2019. It is not necessary for the Government to prove that the conspiracy lasted throughout the entire period alleged, but only that it existed for some period within that time frame

I explained the elements of each of the objects of Count Six earlier, when I talked securities fraud and wire fraud as substantive offenses. Those earlier explanations apply here.

However, please note that while I have spoken about the elements of wire fraud in the context of the alleged investment fraud scheme, I have not instructed you on the elements of securities fraud in the context of that scheme, and so let me do that now.  The elements of securities fraud are the same regardless of whether you are considering the alleged insider trading scheme or the investment fraud scheme, but I want to provide you some additional guidance about how the elements of securities fraud apply in the context of the alleged investment fraud, one of the two objects of the conspiracy charged in Count Six.

**"Security"**

I instruct you that the term "security" is defined in the statute that makes securities fraud a crime.  Congress drafted the term "security" broadly because its purpose was to regulate investments, in whatever form they are made and by whatever name they are called.   The definition of the term security includes, among other things, "any . . . stock . . . investment contract . . . participation in any profit-sharing agreement . . . [and] any instrumentality commonly known as a security."  An "investment contract" means a contract, transaction, or scheme involving, one, an investment of money, two, in a common enterprise, three, with the expectation that profits will be derived solely from the efforts of the promoter or a third party.

### Device, Scheme, or Artifice to Defraud

I have already instructed you on the meaning of a device, scheme, or artifice to defraud in the context of Counts Two, Three, and Seven, and you should follow those instructions for Count Six as well.

### False Statements and Omissions

A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was made with the intention to deceive. The concealment of material facts in a manner that makes what is said or represented deliberately misleading may also constitute false or fraudulent statements under the statute. The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed to make such disclosure with the intent to defraud.

The deception need not be based upon spoken or written words alone. The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance. If there is deception, the manner in which it is accomplished does not matter.

### "In Connection With"

You cannot find that the Government has proven the first element of securities fraud unless you find that the defendant participated, or agreed to participate, in fraudulent conduct that was "in connection with" a purchase or sale of securities. The requirement that the fraudulent conduct be "in connection with" a purchase or sale of securities is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be "in connection with" the purchase or sale of

securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.
You need not find that the defendant actually participated in any specific purchase or sale of a
security if you find that the defendant participated, or agreed to participate, in fraudulent conduct
that was "in connection with" a "purchase or sale" of securities.

It is not necessary for you to find that the defendant was or would be the actual seller of
the securities.  It is sufficient if the misrepresentation or omission of material fact involved the
purchase or sale of securities.  By the same token, the Government need not prove that the
defendant personally made the misrepresentation or that he omitted the material fact.  It is
sufficient if the Government establishes that the defendant caused the statement to be made or
the fact to be omitted.  With regard to the alleged misrepresentations and omissions, you must
determine whether the statements were true or false when made, and, in the case of alleged
omissions, whether the omissions were misleading.

**Material Fact**

The false or fraudulent representation or concealment must relate to a material fact or
matter.  I previously defined the phrase "material fact" in instructing you on Count Seven in the
context of the alleged investment fraud, and you should use the same definition with respect to
both objects of Count Six, that is, both securities fraud and wire fraud.

**Interstate Commerce**

With respect to the interstate commerce requirement for securities fraud, let me first note
that it is unnecessary for the Government to prove both the mails or an instrumentality of
interstate commerce was used in furtherance of the fraudulent scheme.  Only one of the above –
either the mails or an instrumentality of interstate commerce – is enough.  But you must be
unanimous as to at least one.

In considering this element, it is not necessary for you to find that the defendant was or would have been directly or personally involved in any mailing or the use of an instrumentality of interstate commerce.  If the conduct alleged would naturally and probably result in the use of the mails or an instrumentality of interstate commerce, this element would be satisfied.

Nor is it necessary that the items sent through the mails or communicated through an instrumentality of interstate commerce did or would contain the fraudulent material, or anything criminal or objectionable.  The matter mailed or communicated may be entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

The use of the mails or an instrumentality of interstate commerce need not be central to the execution of the scheme or even be incidental to it.  All that is required is that the use of the mails or an instrumentality of interstate commerce bear some relation to the object of the scheme or fraudulent conduct.

In fact, the actual purchase or sale of a security need not be accompanied by the use of the mails or an instrumentality of interstate commerce, so long as the mails or instrumentality of interstate commerce are used in furtherance of the scheme and the defendant was still engaged in actions that are part of a fraudulent scheme when the mails or the instrumentalities of interstate commerce were used.

The use of the term "mails" is self-explanatory, and includes the United States Mail and Federal Express and other commercial mail couriers.  The term instrumentality of interstate commerce means instruments, devices and means of conducting trade, commerce, transportation, or communication among any two states, or between this country and a foreign country. Interstate telephone calls – *i.e.*, telephone calls made by a caller in one state to another person in another state, or from the United States to another country, or vice versa – would be an example

of using an instrumentality of interstate commerce.  Other examples would be a text message, an

email, or wire transfer of money that was sent from one state to another state, or from the United

States to another country, or vice versa.  It is not necessary that the defendant be directly or

personally involved in mailing or use of the instrumentality.  If the defendant was an active

participant in the scheme and took steps or engaged in conduct which he or she knew or could

reasonably foresee would naturally and probably result in the use of the mails or interstate wires,

then you may find that he or she caused them to be used.  The items allegedly sent through the

mails or communicated through the instrumentality of interstate commerce need not have

contained fraudulent material or anything criminal or objectionable, nor need they be central to

the execution of the alleged scheme to defraud or allegedly fraudulent conduct and may even be

incidental to it.  All that is required is that the use of the mails or instrumentalities must bear

some relation to the object of the alleged scheme or conduct.

> Adapted from the charge of the Honorable P. Kevin Castel in
> *United States v. Bergstein*, 16 Cr. 746 (PKC); the Honorable Paul
> G. Gardephe in *United States v. Tuzman*, 15 Cr. 536 (PGG); the
> Honorable Denny Chin in *United States v. Richards et al.*, 98 Cr.
> 1377 (DC); the Honorable Barbara S. Jones in *United States v.
> Ebbers*, 02 Cr. 1144 (BSJ) and *United States v. Weissman*, 01 Cr.
> 529 (BSJ); the Honorable Michael B. Mukasey in *United States v.
> Goldenberg*, 98 Cr. 974 (MBM) (S.D.N.Y. Dec. 20, 1999); and
> from the Honorable Leonard B. Sand in *United States v.
> Pignatiello*, S1 96 Cr. 1032 (LBS) (July 14, 1999), and from Sand,
> et al., *Modern Federal Jury Instructions*, Instrs. 57-20, 57- 21, 57-
> 25. *See also United States v. Skelly*, 442 F.3d 94, 98 (2d Cir.
> 2006); *United States v. Giordano*, 442 F.3d 30, 40 & n.11 (2d Cir.
> 2006) (defining "instrumentality of interstate commerce"); *United
> States v. Santoro*, 302 F.3d 76, 80-81 (2d Cir. 2002) ("Unlike
> customers who independently find their stocks and whose brokers
> merely execute trades at their command, customers who rely on
> investment recommendations reasonably trust their brokers to fully
> disclose all information pertinent to the recommendation and
> quality of the investment."); *United States v. Szur*, 289 F.3d 200,
> 210 (2d Cir. 2002) *see also* Sand, et al., *Modern Federal Jury
> Instructions*, Instr. 44-4; *United States v. Amrep Corp.*, 560 F.2d

539, 546 (2d Cir. 1977) (distinguishing the existence of a scheme to defraud from the "means adopted to effectuate that scheme," and holding that the government need not prove every means charged in the indictment so long as "there is sufficient overall proof that the scheme exists" (internal quotation marks omitted)).

*See also United States* v. *Fleishman*, 11 Cr. 32 (JSR), Docket Entry No. 129 (Jury Instruction), at 17; *Carpenter* v. *United States*, 484 U.S. 19, 25 (1987) (intent to defraud in context of mail fraud charge in insider trading case); *see also United States* v. *Yip*, 930 F.2d 142, 146 (2d Cir. 1991); *United States* v. *Rios*, 91 Cr. 94 (LBS) (S.D.N.Y. 1992).

**REQUEST NO. 17**

**Conscious Avoidance**

As I have explained, all of the counts charged require the Government to prove that the defendant acted knowingly.  In determining whether the defendant acted knowingly, you may consider whether he deliberately closed his eyes to what otherwise would have been obvious. The following instructions apply only to the knowledge element of the charged crimes, and not to the question of the defendant's intent.

I would like to point out that the necessary knowledge on the part of the defendant with respect to any particular charge cannot be established by showing that the defendant was careless, negligent, or foolish.  However, one may not willfully and intentionally remain ignorant of a fact material and important to his conduct in order to escape the consequences of criminal law.

Thus, if you find beyond a reasonable doubt that the defendant received confidential inside information and traded securities based on that information, or caused others to trade securities based on that information, and was aware that there was a high probability that the information was confidential inside information, but the defendant took action to avoid learning the truth of that fact, then you may find that the defendant had knowledge of that material fact. In other words, a defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts which would confirm to him that he was engaged in criminal conduct.  However, if you find that the defendant actually believed that the information at issue was not confidential inside information, he may not be convicted.

*See Stewart* I; *Walters*; *United States* v. *Park*, 05 Cr. 59 (DC) (S.D.N.Y. 2006); *see also United States* v. *Bonventre*, 646 F. App'x 73, 2016 WL 1579036, at *7-8 (2d Cir. Apr. 20, 2016)

51

(summary order) (approving conscious avoidance charge); *United States* v. *Whitman*, 555 F. App'x 98, 105–06 (2d Cir. 2014) (summary order) (approving charge in insider trading case); *United States* v. *Cuti*, 720 F.3d 453, 463 (2d Cir. 2013).

**REQUEST NO. 18**

**Venue**

With respect any given count you are considering, the Government, in addition to proving the essential elements of that charge, must also prove that at least one act in furtherance of the charge occurred in the Southern District of New York.  This requirement is called venue. The Southern District of New York is the judicial district that includes Manhattan and the Bronx, as well as several other counties not relevant to this case.

The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York.   It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District.  The act itself need not be a criminal act.  It could include, for example, processing or executing a securities trade within this District.  And the act need not have been taken by the defendant, so long as the act was part of the crime that you find the defendant committed.

Unlike the elements of the offenses which must be proven beyond a reasonable doubt, the Government is only required to prove venue by a preponderance of the evidence.  A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this District.

> See *Pinto-Thomaz*; *Stewart* I; *Chow*; *Riley*; *Martoma*; *Steinberg*; *Whitman*; *Gupta*.

**REQUEST NO. 19**

**<u>Variance in Dates and Amounts</u>**

The Indictment refers to various dates and amounts.  I instruct you that it does not matter if a specific event is alleged to have occurred on or about a certain date or month but the testimony indicates that in fact it was a different date or month.  Nor does it matter if the Indictment alleges that a transaction involved a specific number of shares or amount of money, but the testimony indicates that it was a different amount.  The law requires only a substantial similarity between the dates, months, and amounts alleged in the Indictment and the dates, months, and amounts established by the evidence.

*See Stewart* I; *Chow*; *Riley*; *Steinberg*.

## WITNESSES

## REQUEST NO. 20

## Defendant's Testimony [or Defendant's Right Not to Testify]

[*If the defendant testifies:*]  A defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, it is the Government's burden to prove the defendant guilty beyond a reasonable doubt, and that burden remains on the Government at all times.  In this case, the defendant did testify and he was subject to cross-examination like any other witness.  You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of the case.

[*If defendant does not testify and requests an instruction concerning his election not to do so:*]  The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to the defendant.

A defendant is never required to prove that he or she is innocent.  Therefore, you must not attach any significance to the fact that the defendant did not testify.  No adverse inference against the defendant may be drawn by you because he did not take the witness stand, and you may not consider it against the defendant in any way in your deliberations in the jury room.

> *See Pinto-Thomaz*; *Stewart* I; *Chow*; *Riley*; *Bonventre*; *see also*
> *United States* v. *Gaines*, 457 F.3d 238, 249 & n.9 (2d Cir. 2006)
> (regarding instruction about defendant's testimony).

## REQUEST NO. 21

### Preparation of Witnesses

You have heard evidence that, prior to appearing in court, witnesses have discussed the facts of the case and their testimony with attorneys.  Although you may consider this fact when you are evaluating a witness's credibility, I should tell you that there is nothing improper or unusual about a witness meeting with lawyers before testifying, so that the witness can be aware of the subjects he or she will be questioned about, and can focus on those subjects and have the opportunity to prepare or review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

*See Pinto-Thomaz*; *Stewart* I; *Chow*; *Steinberg*; *Riley*; *Bonventre*.

**REQUEST NO. 22**

**Law Enforcement and Government Employee Witnesses**

You have heard the testimony of witnesses employed as law enforcement officials and of employees of certain Government agencies or regulators.  The fact that a witness may be employed by federal agencies or regulators does not mean that his or her testimony is necessarily deserving of any more or any less consideration, or greater or lesser weight, than that of any other witness.  It is your decision, after reviewing all of the evidence, whether to accept the testimony of the law enforcement or Government employee witness, as it is with every other type of witness, and to give that testimony whatever weight you find it deserves.

*See Stewart* I; *Chow*; *Steinberg.*

**REQUEST NO. 23**

**Accomplice/Cooperating Witness Testimony**

You have also heard from one witness—Martha Bustos—who testified that she was involved in criminal conduct, and who subsequently pled guilty to her criminal conduct pursuant to what is called a "cooperation agreement" with the Government.

Experience will tell you that the Government frequently must rely on the testimony of cooperating witnesses, and other witnesses who have admitted to participating in crimes. The Government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.

The testimony of such cooperating witnesses is properly considered by the jury. If cooperating witnesses could not be used, there would be many cases in which there was real guilt and conviction should be had, but in which convictions would be unobtainable.

For these very reasons, the law allows the use of cooperating witness testimony. Indeed, it is the law in federal courts that the testimony of a single cooperating witness may be enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

Because of the possible interest a cooperating witness may have in testifying, the cooperating witness's testimony should be scrutinized with care and caution. The fact that a witness is a cooperating witness can be considered by you as bearing upon her credibility. It does not follow, however, that simply because a person has admitted to participating in one or more crimes, that she is incapable of giving truthful testimony.

Like the testimony of any other witness, cooperating witness testimony should be given the weight that it deserves in light of the facts and circumstances before you, taking into account

the witness's demeanor, candor, the strength and accuracy of a witness's recollection, her background, and the extent to which her testimony is or is not corroborated by other evidence in the case.

You heard testimony about a cooperation agreement entered into between the Government and Ms. Bustos.  I must caution you that it is no concern of yours why the Government made an agreement with a particular witness.  Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of a cooperating witness, you should ask yourselves whether this cooperating witness would benefit more by lying, or by telling the truth.  Was her testimony made up in any way because she believed or hoped that she would somehow receive favorable treatment by testifying falsely?  Or did she believe that her interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause her to lie, or was it one that would cause her to tell the truth?  Did this motivation color her testimony?

If you find that the testimony was false, you should reject it.  If, however, after a cautious and careful examination of the cooperating witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept her testimony in other parts, or may disregard all of it.  That is a determination entirely for you, the jury.

*See Stewart* I; *Riley*; *Bonventre*; Hon. Katherine B. Forrest, Jury Charge, *United States* v. *Morales*, 15 Cr. 879 (KBF) (S.D.N.Y. 2017); Sand, *Modern Federal Jury Instructions*, Instr. 7-5.

**REQUEST NO. 24**

**<u>Uncalled Witnesses – Equally Available</u>**

There are people whose names you heard during the course of the trial that did not appear in court to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should remember my instruction, however, that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence, and that the burden always rests with the Government to prove the defendant's guilt beyond a reasonable doubt.

*See Stewart* I; *Chow*; *Bonventre*; *Riley*.

## REQUEST NO. 25

### **Persons Not on Trial**

You may not draw any inference, favorable or unfavorable, towards the Government or the defendant from the fact that any person other than the defendant is not on trial here.  You also may not speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

*See Stewart* I; *Chow*; *Bonventre*.

## REQUEST NO. 26

## **Expert Witnesses**

## **[If applicable]**

In this case, I permitted certain witnesses to express opinions about certain matters that are at issue.  Such testimony, which we refer to as "expert testimony," was presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing expert testimony, you may consider the witness's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.  You should not, however, credit the opinion testimony just because I allowed the witness to testify as an expert.  Nor should you substitute the expert's opinion for your own reason, judgment, and common sense.  The determination of the facts in this case rest solely with you.

*See Riley*; *Whitman.*

**<u>OTHER EVIDENCE</u>**

**REQUEST NO. 27**

**<u>Summary Charts</u>**

You have seen exhibits in the form of charts and summaries.  These exhibits purport to summarize the underlying evidence that was used to prepare them.  I decided to admit these charts and summaries in order to save time and to avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

*See Stewart* I; *Chow*; *Riley*; *Bonventre*.

REQUEST NO. 28

**Audio Recordings and Transcripts**

During this trial, you have heard audio recordings of various telephone conversations.  I instruct you that these recordings were made in a lawful manner, that no one's rights were violated in the making of these recordings, and that the Government's use of this evidence is entirely lawful. Therefore, you must give these audio recordings your full consideration, along with all the other evidence in the case, as you determine whether the Government has proved the defendant's guilt beyond a reasonable doubt.  And you must do that even if you disapprove of the way in which this evidence was collected.  Whether you approve or disapprove of the recording of these conversations may not enter your deliberations.

In connection with these recordings, the Government was permitted to provide you with transcripts prepared by the prosecution team.  The transcripts were given to you as an aid to assist you in listening to the recordings.  But the transcripts are not evidence.  Therefore, when the recordings were played, I advised you to listen very carefully to the recordings themselves. You must make your own determination of what appears on the recordings based on what you heard.  If you heard something different than what appears in the transcripts, what you heard is controlling.

    *See Stewart* I; *Riley*.

65

**REQUEST NO. 29**

**<u>Stipulations of Testimony</u>**

**[If applicable]**

In this case you have heard evidence in the form of stipulations of testimony.  A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would have given certain testimony.  You must accept as true the fact that the witness would have given that testimony.  However, it is for you to determine the effect to be given that testimony.

      *See Stewart* I; *Bonventre*.

**REQUEST NO. 30**

**Stipulations of Fact**

**[If applicable]**

In this case you have also heard evidence in the form of stipulations that contained facts that were agreed to be true.  In such instances, you must accept those facts as true.

*See Stewart* I; *Bonventre*.

**REQUEST NO. 31**

**Particular Investigative Techniques Not Required**

**[If applicable]**

You have heard reference to the fact that certain investigative techniques were not used by law enforcement authorities.  There is no legal requirement, however, that the Government prove its case through any particular means.  The Government is not on trial, and law enforcement techniques are not your concern.  Your concern is to determine whether or not the Government has proven the guilt of the defendant beyond a reasonable doubt.

*See Stewart* I; *Chow*; *Bonventre.*

## REQUEST NO. 32

### Use of Evidence Obtained Pursuant to Searches

You have heard testimony about evidence seized in connection with certain searches conducted by law enforcement officers, including searches of electronic accounts. Evidence obtained from these searches was properly admitted in this case, and may be properly considered by you.  Such searches were entirely appropriate law enforcement actions.  Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven the defendants' guilt beyond a reasonable doubt.

Adapted from the Honorable Pierre N. Leval's Instructions in
*United States v. Ogando*, 90 Cr. 469 (PNL) (S.D.N.Y. 1991), aff'd,
968 F.2d 146 (2d Cir. 1992), and *United States v. Mucciante*, 91
Cr. 403 (PNL) (S.D.N.Y. 1992).

## <u>CONCLUSION</u>

In submitting these requests to charge, the Government respectfully reserves the right to

submit additional or modified requests at or near the close of evidence.

Dated:  New York, New York
        May 17, 2021

                                    Respectfully submitted,

                                    AUDREY STRAUSS
                                    United States Attorney
                                    Southern District of New York


                              By:  _____/s/_____
                                    Edward A. Imperatore
                                    Jared Lenow
                                    Assistant United States Attorneys
                                    Southern District of New York
                                    (212) 637- 2327/1068