

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 21, 2021

<u>**By E-Mail**</u>

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY  10007

        Re:      <u>**United States** v. **Donald Blakstad**, S2 19 Cr. 486 (ER)</u>

Dear Judge Ramos:

      The Government respectfully files this letter concerning the admissibility of testimony by Paul Hinton of the Brattle Group, who has prepared summary slides concerning voluminous financial records in this matter.  The defense has raised the prospect of a *Daubert* hearing concerning Mr. Hinton's anticipated testimony, but the Government is not seeking to offer Mr. Hinton as an expert witness.  Rather, the Mr. Hinton is being offered as a summary witness under Rule 1006 of the Federal Rules of Evidence, and this Court and other courts in this District have allowed the admission of such testimony.  A *Daubert* hearing is unnecessary because Mr. Hinton is being called as a summary witness and thus does not need to be qualified as an expert.

**A.  Factual Background**

      The Government's evidence in this case includes voluminous financial records, including records from bank accounts, brokerage accounts, and credit card accounts.  A review of those accounts reveals financial flows that are relevant to both the charged insider trading and investment fraud charges in this case.  With respect to the insider trading charges, the financial records show, among other things, Blakstad transferring money from Midcontinental Petroleum accounts to others to engage in trading on his behalf, Blakstad receiving the profits of that trading into Midcontinental Petroleum bank accounts, and Blakstad then spending down those profits.  With respect to the investment fraud charges, the financial records show, among other things, investor money being deposited into Midcontinental Petroleum accounts, and Blakstad then spending down those investor funds.

      These financial flows are clear on the face of the underlying records, and would be comprehensible to a layperson examining the records.  Indeed, many of the core financial documents are monthly checking account statements from Bank of America, in a format that would be familiar to any person with a bank checking account.  However, the relevant financial records and transactions in this case are voluminous, and the funds at issue are often transferred between multiple accounts before ultimately being spent.

Hon. Edgardo Ramos                                                                                    Page 2
June 21, 2021

As the Government voluntarily disclosed to the defendant in an April 26, 2021 letter, the Government intends to call Mr. Hinton as a summary witnesses concerning voluminous financial records.  The Government's letter stated that although Mr. Hinton's testimony "is most accurately classified as summary testimony rather than expert testimony, the Government makes this disclosure out of an abundance of caution, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), that it is prepared to qualify [Hinton as an expert] under Federal Rule of Evidence 702 in the event that it is deemed necessary to do so."  The letter enclosed a  curriculum vitae for Hinton, and stated that "[w]e anticipate that Hinton will testify about a tracing analysis that he will perform and summary charts depicting the use of proceeds of the insider trading scheme and the investment fraud scheme alleged in the Indictment."[1]

The Government also advised the defense by letter on April 30, 2016 that "[w]e do not expect that Mr. Hinton will offer any expert opinion."

## B.  Applicable Law

Rule 1006 of the Federal Rules of Evidence allow a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  The Rule further provides that the proponent of the summary chart "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  The Second Circuit "has long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations, so long as the judge properly instructs the jury that it is not to consider the charts as evidence."  *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989).

"The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, while opinion testimony can be presented by either a lay or expert witness."  *United States v. Cuti*, 720 F.3d 453, 457–58 (2d Cir. 2013) (internal citations omitted).  Under Rule 701 of the Federal Rules of Evidence, a witness may testify in the form of a conclusion or opinion that is a) rationally based on the perception of the witness, b) helpful to a clear understanding of the witness' [s] testimony or the determination of a fact in issue, and c) not based on scientific, technical, or other specialized knowledge ...."  Fed. R. Evid. 701.  "Lay opinion under Rule 701 must be limited to opinions that "result[ ] from a process of reasoning familiar in everyday life."  *Cuti*, 720 F.3d at 457–58 (quoting Fed. R. Evid. 701 advisory committee's note, 2000 amend.).

---

[1] The Federal Rules of Criminal Procedure require the Government to provide a defendant in  criminal case with "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  Fed. R. Crim. P. 16(a)(1)(G).  By contrast, the Federal Rules of Civil Procedure require expert disclosures to include a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."

"Rule 701 'does not distinguish between expert and lay witnesses, but rather between expert and lay testimony.'"  *Disability Advocs., Inc. v. Paterson*, O3 Cv. 3209 (NGG) (MDG), 2008 WL 5378365, at \*14–15 (E.D.N.Y. Dec. 22, 2008) (quoting Fed. R. Evid. 701, Advisory Committee Note (2000)).  "The Second Circuit has held that a witness's specialized knowledge does not preclude the witness from testifying under Rule 701, provided that the testimony was rooted in personal perception, regardless of whether the witness could have testified on other matters as an expert.  *Id.*; *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir.2007) (former company accountant may testify as lay witness about company's books, including effects of allegedly fraudulent debt reclassifications on company's relationship with other business entities, because testimony was based on witness's observations during twenty months as a company employee).  "[A] court must focus on the 'reasoning process' by which a witness reached his proffered opinion," and lay opinion testimony must be "informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge ."  *United States v. Garcia*, 413 F.3d 201 (2d Cir.2005).

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Rule 702 requires "more than subjective belief or unsupported speculation."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).  Under *Daubert*, a court functions as a "gatekeeper" that reviews the reliability and relevance of an expert's technical, specialized knowledge.  *Restivo v. Hessemann*, 846 F.3d 547, 575–76 (2d Cir. 2017).  "[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison."  *Restivo*, 846 F.3d 547 at 577 (quotation marks omitted).

**C.  Discussion**

Mr. Hinton's testimony is properly characterized as summary testimony rather than expert testimony, as his testimony will consist of summarizing the contents of voluminous bank records, and applying straightforward mathematical calculations based on the financial transactions included in those records.  Specifically, Mr. Hinton's summary charts will illustrate certain inflows into relevant accounts, and then show what debits in those accounts immediately follow those inflows.  Financial outflows that immediately follow a given financial inflow are deemed "traced" to the inflow.  For example, if an account has a starting balance of $10, and $100 is then deposited into the account, followed by a $50 debit, then the $50 debit is "traced" to the $100 inflow.  This is known as a "last in, first out" ("LIFO") analysis.  The application of this simple LIFO principle is not based on scientific, technical, or other specialized knowledge, but is rather the sort of "reasoning familiar in everyday life" that lay persons understand.  The Government does not anticipate seeking to elicit testimony from Mr. Hinton on accounting rules or methods, or to opine on the relative merits of various approaches to tracing.  Rather, we anticipate that Mr. Hinton will

Hon. Edgardo Ramos                                                                                   Page 4
June 21, 2021

testify that he was instructed to apply the "last in, first out" approach to trace funds, and that he applied that approach to summarize financial flows found in voluminous records.

The Second Circuit has approved of layperson fact testimony concerning the application of straightforward and transparent financial calculations and assumptions. In *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), the court upheld the admission of accountants' testimony concerning how they would apply accounting standards under various situations as appropriate fact testimony. The court held that this was appropriate fact testimony because, among other reasons, the "reasoning process that the witnesses employed in answering the hypotheticals was straightforward and transparent to the jurors, who could readily discern whether the responses given were reliable." *Id.* at 458. The court held in the alternative that this testimony was admissible as lay opinion under Federal Rule of Evidence 701. That reasoning applies with equal force here: Mr. Hinton's simple and intuitively understandable LIFO analysis does not require any sort of specialized, technical knowledge. Moreover, a number of courts in this District (including this Court) have permitted summary witnesses to testify about financial tracing. *See, e.g.*, *United States v. Moseley*, 16 Cr. 79 (ER) (permitting financial analyst to perform tracing analysis of fraud proceeds as summary witness); *United States v. Margulies*, 17 Cr. 638 (JSR) (August 2019 securities and wire fraud trial); *United States v. Galanis*, 16 Cr. 371 (RA) (May/June 2018 securities fraud trial); *United State v. Bergstein*, 16 Cr. 746 (PKC) (permitting Paul Hinton to testify about tracing analysis as summary witness). Thus, a *Daubert* hearing is unnecessary because Mr. Hinton is being called as a summary witness and does not need to be qualified as an expert.

In the alternative, should the Court deem it necessary, the Government is prepared to offer Mr. Hinton as an expert in financial tracing under Rule 702. Mr. Hinton has a wealth of experience in financial tracing and analysis and is more than qualified to testify as an expert on this subject (although the Government does not believe such a qualification is necessary here), and the Government provided notice to the defense of Mr. Hinton's anticipated testimony nearly two months ago in an abundance of caution.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:    /s/
Edward A. Imperatore / Jared Lenow
Assistant United States Attorneys
(212) 637-2327 / 1068

CC:    Eugene Iredale, Esq. (by email)