UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA      :

     -v.-                  :         S2 19 Cr. 486 (ER)

DONALD BLAKSTAD,        :

              Defendant.      :
------------------------------------------------------x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DONALD BLAKSTAD'S MOTION FOR BAIL PENDING APPEAL

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrews Plaza
New York, New York 10007

Edward A. Imperatore
Jared Lenow
Assistant United States Attorneys
     - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Donald Blakstad's motion for bail pending appeal.  Because the issues raised in Blakstad's motion are all subject to deferential review on appeal, and none presents a substantial question of law or fact likely to result in reversal or a new trial, Blakstad's motion is meritless and should be denied.

## FACTUAL BACKGROUND

### A.    The Trial and Offense Conduct

On June 29, 2021, following a two-week trial and approximately 90 minutes of deliberations, Blakstad was convicted by a jury on all counts of Indictment S2 19 Cr. 486 (ER) (the "S2 Indictment").  The S2 Indictment charged Blakstad with five insider trading counts: conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371 (Count One); two counts of securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Counts Two and Three); conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (Count Four); and wire fraud, in violation of Title 18, United States Code, Section 1343 (Count Five).  The Indictment also charged Blakstad with two investment fraud counts: conspiracy to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371 (Count Six), and wire fraud, in violation of Title 18, United States Code, Section 1343 (Count Seven).

At trial, extensive documentary evidence and witness testimony proved that Blakstad orchestrated two criminal schemes: an insider trading scheme and an investment fraud scheme against numerous investors, which together netted more than $6 million in criminal profits.  To prove its case at trial, the Government called nearly a dozen witnesses over the course of two

weeks, including Martha Bustos, a cooperating witness who conspired with Blakstad, investor victims whom Blakstad defrauded, and three summary witnesses who summarized documentary evidence of the schemes and Blakstad's criminal profits.   The Government also introduced hundreds of exhibits, which included, among other things, emails and text messages reflecting the pattern of Blakstad's receipt of inside information and his and his associates' illegal trading on that information, emails and a written private placement memorandum that Blakstad provided to investors that contained material misrepresentations, and bank and brokerage records reflecting Blakstad's receipt of criminal proceeds from both schemes and his misuse of those proceeds.

### 1.   The Insider Trading Scheme

The evidence at trial established that Blakstad participated in an insider trading scheme with Martha Bustos, a certified public accountant who worked in Illumina's accounting department.   By virtue of her employment at Illumina, Bustos had access to material nonpublic information about Illumina's financial condition, including its earnings.   On multiple occasions, from in or about 2016 through in or about 2018, Blakstad obtained inside information about Illumina's financial condition from Bustos before Illumina publicly announced its quarterly financial results and used this inside information to make profitable trades in Illumina securities. At times, Blakstad tipped his associates so that they could trade Illumina stock and options based on the inside information.   At other times, in order to avoid detection, Blakstad arranged for his associates to purchase Illumina securities for Blakstad's own benefit in brokerage accounts controlled by his associates.   Following the public announcement of Illumina's earnings on certain occasions, Blakstad and his associates sold the Illumina securities at a significant profit, sometimes exceeding more than 2,000 percent.   In total, Blakstad and his associates made more than $6 million from purchasing and selling Illumina securities.

The Government's evidence at trial on the insider trading counts was overwhelming. It included the testimony of Bustos, who entered into a cooperation agreement with the Government and provided a first-hand account of how, among other things, she repeatedly tipped Blakstad with inside information in response to his requests and the steps Blakstad took to try to keep the scheme a secret, Trial Tr. 119-395; highly incriminating text messages between Blakstad and another co-conspirator, Robert Maron, whom Blakstad tipped with inside information (such as messages from Blakstad stating "Don't blow this opportunity . . . You will want to kill yourself . . . "), GX 800; Maron's own  incriminating text messages to others recounting his conversations with Blakstad about insider trading (for example, "Don just called me . . . Grandslam expected"), GX 800; financial records and summary charts showing how Blakstad and his associates executed highly profitable trades in Illumina, GX 50, 200-376; and call detail records and related summary charts showing communications among co-conspirators, GX 53, 400.

## 2.  The Investment Fraud Scheme

The evidence at trial also established that Blakstad and his associate Michael Ciprianni fraudulently induced victim investors to make up-front, lump-sum investments for purported securities issued by Midcontinental Petroleum, which Blakstad then misappropriated, in substantial part.  Among other things, Blakstad provided victims with fraudulent documents indicating that their money would be used to fund energy industry ventures.  Those fraudulent documents also represented to investors that their investment funds would be maintained in a company bank account pending their use, and that investors would receive a 6 percent annual interest rate on their investments.  In reality, Midcontinental Petroleum had no business operations or revenue, and Blakstad misappropriated funds invested with Midcontinental Petroleum for his

personal purposes, in substantial part.  The evidence at trial established that Blakstad fraudulently induced several victims to invest more than $1 million with Midcontinental Petroleum.

The Government introduced overwhelming evidence on the investment fraud counts, including testimony of four investor victims who outlined the representations Blakstad made to them in connection with their investments (Trial Tr. 439-556, 709-777), written misrepresentations made to victims concerning their investments (GX 604, 612, 614, 616), and financial records (and charts summarizing those underlying records) showing the misappropriation of investor funds, GX 51, 901, 902, 905, 906, 907, among other evidence.

### B.    Blakstad's Post-Trial Motion

On August 27, 2021, following his conviction, Blakstad filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.  (Dkt. 149 & 150).  Blakstad argued that (1) Paul Hinton, a Government witness, improperly testified as a summary witness pursuant to Federal Rule of Evidence 1006 as opposed to an expert under Federal Rule of Evidence 702, and the Government allegedly failed to provide timely discovery as required for expert witnesses; (2) the Government allegedly presented false testimony from Hinton regarding Matt Tucci's investment in Midcontinental Petroleum, which was subsequently converted to a personal loan; (3) the Government allegedly engaged in a constructive amendment of Counts 6 and 7 of the S2 Indictment; and (4) the Government's summation allegedly contained certain improper remarks, thereby depriving Blakstad of a fair trial.

The Court rejected each of these arguments and denied Blakstad's new trial motion in a written Opinion & Order dated November 9, 2021 (Docket 171) (the "Opinion").  First, the Court held that Hinton's testimony properly qualified a summary witness testimony rather than expert testimony and, in any event, Blakstad had not established a Rule 16 violation or any prejudice

resulting from any such violation.  (Opinion at 12-14).  Second, the Court held that there was no perjury in Hinton's testimony about Tucci, and, in any event, there was no prejudice to Blakstad. (Opinion at 15-17).  Third, the Court held that there was no constructive amendment of the indictment and, in any event, there was no prejudice to Blakstad.  (Opinion at 18-22).  Fourth, the Court held that the Government's remarks in summation about Blakstad's testimony, to which defense counsel never objected during trial, were not plain error.  (Opinion at 22-27).

### C.    Sentencing

At sentencing on November 3, 2021, the Court sentenced Blakstad principally to a term of 36 months' imprisonment, to run concurrently on all counts.  The sentence was well below Blakstad's advisory Guidelines range of 151 to 188 months' imprisonment.   In imposing sentencing, the Court found that Blakstad had perjured himself extensively during his trial testimony about, among other things, his receipt and use of inside information from Bustos. (Sentencing Tr. 17, 28).

## ARGUMENT

Blakstad seeks bail pending appeal based on several arguments he claims present "substantial questions" likely to result in a new trial.  (Dkt. 180, "Motion" or "Mot." 8-9).  In so doing, he repeats the very same arguments that he advanced in his motion for a new trial, which the Court has fully considered and rejected.  He once again argues that (1) Hinton provided expert testimony and that the Government's production of discovery materials related to Hinton was not timely, (2) the Government and Hinton misleadingly characterized Tucci as an investor, (3) there was a constructive amendment of the Indictment, and (4) the Government made improper remarks in summation about Blakstad's testimony.   (Mot. 8-9).

In his motion, Blakstad fails to address or challenge the Court's rejection, in the context of Blakstad's new trial motion, of the very arguments Blakstad repeats here.  (Dkt. 171).  Nor does Blakstad attempt to satisfy the applicable legal standard, which places the burden on Blakstad to demonstrate that the issues he identifies present a substantial question of law or fact that is *likely to result in reversal or a new trial*.  Because none of Blakstad's claims comes close to satisfying that standard, and in light of the deferential standard of review applicable to all of his claims, Blakstad's motion for bail pending appeal must be denied.

## I.      Applicable Law

### A.      Bail Pending Appeal

A court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment" be detained pending appeal unless the judicial officer finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community if released," and that the appeal, in relevant respect, "is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, [or] (ii) an order for a new trial."  18 U.S.C. § 3143(b).

This provision gives effect to Congress's view that "[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even to permit it in the absence of exceptional circumstances."  *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985).  Following a guilty verdict and sentencing, there is a "presumption in favor of detention."  *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).  It is the defendant's burden to "rebut that presumption with clear and convincing evidence."  *Id.*

Under the second prong of the standard, a "substantial question" is "a close question or one that very well could be decided the other way."  *United States v. Randell*, 761 F.2d 122, 125 (2d

Cir. 1985) (quotation marks omitted).  "If a court does find that a question raised on appeal is 'substantial,' it must then consider whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'"  *Id.* at 125 (quoting *United States v. Miller*, 753 F.2d at 23).  With respect to all of these issues, "the burden of persuasion rests on the defendant." *Id.*

## II.    Discussion

### A.    Hinton's Testimony and the Government's Discovery Are Not Grounds For a New Trial

Although Blakstad was unable to demonstrate in his motion for a new trial that Hinton was an expert witness rather than a summary witness or any prejudice resulting from an allegedly untimely discovery production, he now summarily claims that his Hinton-related arguments raise "substantial questions" warranting bail pending appeal.  Specifically, Blakstad argues: "[o]ne issue on appeal will be whether Mr. Blakstad was impermissibly prejudiced by the government's failure to provide timely discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure and whether, as a result, such evidence was improperly introduced at trial.  At trial, the government introduced the testimony of Paul Hinton, whom defendant contends gave expert testimony."  (Mot. 8-9).

Blakstad's argument is entirely without merit and fails on multiple grounds, as this Court has previously concluded.  As an initial matter, Blakstad does not attempt to satisfy the applicable legal standard for bail pending appeal.   In any event, as this Court already found, Blakstad's argument fails for independent reasons: (1) Hinton's testimony properly qualified as summary witness testimony rather than expert testimony, (2) the Government's disclosures relating to

Hinton were proper and sufficient, and (3) there was no prejudice to Blakstad even assuming that Hinton was an expert and the production of certain materials should have been made earlier, and Blakstad identifies none.  (Opinion at 12-14).

First, as discussed in more detail in the Government's memorandum of law in opposition to Blakstad's new trial motion (the "Government Brief," Docket 157, at 14-18), the Court has repeatedly and correctly found that Hinton's testimony was not expert testimony.  In concluding that Blakstad's arguments did not warrant a new trial, the Court held: "Hinton testified about the results of the 'last in, first out' tracing methodology, which involved an analysis of voluminous records to determine the flow of money moving into and out of Blakstad's accounts.  Hinton's testimony was not contingent on his scientific, technical, or other specialized knowledge, nor did Hinton use such specialized knowledge to help the jury to understand the evidence or to determine a fact in issue, as required of expert witnesses pursuant to Rule 702."  (Opinion 13).  Under controlling precedent in *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), this Court observed that Hinton's testimony "result[ed] from a process of reasoning familiar in everyday life" and thus was not expert testimony.  (Opinion 13 (quoting *Cuti*, 720 F.3d at 459)).

Second, regardless of whether Hinton's testimony was expert testimony (and it was not), the Government made a complete and timely voluntary production of discovery materials that went well beyond what was required.  (*See* full discussion, Government Brief, Dkt. 157, at 18-24).  As the Court observed, "the main documents underlying Hinton's testimony were financial records produced to the defense nearly two years before trial, and the Government disclosed to the defense drafts of the summary charts in the weeks prior to trial, including the tracing analysis, which contained substantially similar information as the final summary charts."  (Opinion 14). Blakstad does not challenge this conclusion.

8

Finally, there was no prejudice to Blakstad from Hinton's testimony or discovery about which he complains, and Blakstad identifies none.  Each of the Court's rulings was carefully considered, correctly decided and certainly well within the Court's broad discretion.  Furthermore, Blakstad's claims of error will all be subject to harmless error analysis on appeal.  Given the overwhelming evidence of the Blakstad's guilt, even if Blakstad could establish error in the admission of the challenged evidence or testimony, he would not be entitled to a new trial.

Accordingly, Blakstad's arguments about Hinton are wholly without merit for multiple independent reasons and do not present a "substan]tial question" that is likely to result in reversal or a new trial.

### B.      Testimony About White Sands Is Not Grounds for a New Trial

Blakstad next argues that "[i]n eliciting the testimony from Paul Hinton that White Sands Advisors was an investor whose investments funds were misappropriated, the government presented misleading testimony." (Mot. 9).  He claims that the Government, in its presentation of evidence of the investment fraud scheme, mischaracterized White Sands (and its owner, Matthew Tucci) as an investor in Midcontinental Petroleum since, Blakstad asserts, White Sands merely lent money but did not invest it. (Mot 9).  Blakstad's argument, which is contrary to the evidence, his own testimony, and common sense, was squarely rejected by the Court in denying Blakstad's motion for a new trial.  Blakstad offers no basis to challenge the Court's conclusions, and he does not attempt to satisfy the legal standard for bail pending appeal.  His argument fails for independent reasons, as the Court has already concluded: (1) the Government's characterization of White Sands as an investor was grounded in the evidence, and (2) any evidence of White Sands was immaterial to the jury's verdict in any event.

As an initial matter, there was no perjury by Hinton or mischaracterization of White Sands because, as this Court correctly found, "Hinton did not testify to the fact that Tucci was an investor – rather, Hinton testified that he treated Tucci as an investor for purposes of his analysis, as this was an assumption provided to him by the Government. Nonetheless, even assuming that Hinton testified to the fact that Tucci was an investor, this fact is not clearly false based on defense counsel's cross-examination of Hinton and Blakstad's testimony regarding Tucci's loan and whether he invested." (Opinion 17). The evidence demonstrated that Tucci gave his money to Blakstad on behalf of White Sands *after* Blakstad gave Tucci the Midcontinental Petroleum investment prospectus containing numerous misrepresentations, as Blakstad himself admitted. (*See* full discussion, Government Brief, Dkt. 157, at 24-29). Accordingly, any characterization of White Sands or Tucci as an investor was entirely appropriate.

In any event, the White Sands evidence was immaterial to the verdict, as the Court has already held. "Even if the Court assumes that the Government allowed Hinton to testify perjuriously by characterizing Tucci as an investor, the alleged perjury was not material" because "the additional potential for impeachment of [Hinton] would in the circumstances have raised no reasonable likelihood of affecting the jury's verdict." (Opinion 17). The Court observed that (1) the underlying White Sands evidence was appropriately introduced through means other than Hinton's testimony, including through Blakstad, and (2) "there was ample evidence related to the other investors in Blakstad's investment fraud scheme and Blakstad's misappropriation of their funds" putting aside any evidence of White Sands. (Opinion 17). Thus, any error was harmless.

10

Blakstad fails to challenge or address these conclusions.[1]   Accordingly, Blakstad's argument
should be rejected.

### C.      There Was No Constructive Amendment of the Indictment

Blakstad argues that the facts or underlying theory of criminality alleged in the S2
Indictment varied from what was established at trial, amounting to a constructive amendment of
the S2 Indictment.  (Mot. 9).  Blakstad ignores that the Court carefully and repeatedly considered
and rejected Blakstad's argument under controlling Second Circuit precedent on independent
grounds: (1) there was no constructive amendment of the S2 Indictment, and (2) there was no
prejudice to Blakstad in any event.  Once again, Blakstad fails to address the Court's conclusions
and demonstrate that his claim presents a substantial question of law or fact that is likely to result
in reversal or a new trial.

As an initial matter, as this Court properly concluded in rejecting Blakstad's motion for a
new trial, "Blakstad has not established that the presentation of evidence and jury instructions
related to his misrepresentations to investors regarding Midcontinental and their investments 'so
modified essential elements of the offense charged that there is a substantial likelihood that
Blakstad may have been convicted of an offense other than that charged in the S2 Indictment.'"
(Opinion 20-21 (quoting *United States v. Vilar*, 729 F.3d 62, 81 (2d Cir. 2013)) (internal alterations
omitted).   The Court correctly found that the misrepresentations underlying the S1 and S2
Indictments were the same.  Accordingly, the Court correctly held that "the misrepresentations
shown at trial, which Blakstad alleges were not included in or fairly based on the S1 and S2
Indictments, were either identified or encompassed in the allegations in the indictments related to

---

[1] Blakstad does not dispute that his arguments about White Sands have no bearing on the jury's
guilty verdict on the insider trading counts, Counts One Through Five.

misrepresentations about how investor funds would be used only for business purposes." (Opinion 21).

The Court also properly observed, under controlling Second Circuit precedent: the "'core of criminality' is Blakstad's investment fraud scheme to fraudulently obtain money from investors through materially false representations and subsequently misappropriate the funds for personal, not business, purposes." (Opinion 21). Here, "[b]oth the S1 and S2 Indictments and the evidence adduced at trial shared this 'core of criminality,' and related to a 'single set of discrete facts consistent with the charge[s] in the indictment,' with the same 'ultimate purpose' – that Blakstad devised and operated a scheme to fraudulently obtain investment funds through misrepresentations about Midcontinental and misused the funds." (Opinion 21 (quoting *United States v. D'Amelio*, 683 F.3d 412, 419–22 (2d Cir. 2012)).

In any event, Blakstad's argument fails for the independent reason that there was no prejudice, and Blakstad identifies none. As this Court properly concluded at the final pretrial conference and in denying Blakstad's new trial motion: "A variance has not occurred, because the evidence offered at trial did not prove facts materially different from those alleged in the S2 Indictment," and Blakstad's argument is thus "without merit." (Opinion 22). Here, "Blakstad has not shown prejudice, which is required to prevail on a variance claim," because "the facts proven at trial were identical or similar to those alleged in the S2 Indictment, as part of the same investment fraud scheme identified in the S2 Indictment," and "the S2 Indictment gave Blakstad fair and adequate notice that the conspiratorial investment fraud scheme achieved its ultimate purpose through the misrepresentations regarding Midcontinental and the purported use of the investment funds." (Opinion 22). Blakstad fails to challenge that conclusion.

Accordingly, Blakstad's argument is meritless for independent reasons, and he fails to establish a substantial question of law or fact that is likely to result in reversal or a new trial.[2]

### D.     The Government's Summations Were Appropriate

Finally, Blakstad challenges the Government's arguments during summations regarding the falsity of Blakstad's testimony.  The remarks were not inappropriate, especially in the context of the entire summations and evidence, and Blakstad never even objected to them during trial. Moreover, as this Court has already correctly determined, there was no plain error in any event. Blakstad fails to satisfy his burden or challenge the Court's conclusion that there was no plain error and the remarks at issue did not warrant a new trial.  Blakstad's argument thus fails for multiple independent reasons.

### 1.   Applicable Law

"Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'"  *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)).  The Second Circuit has reiterated that "a defendant who seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a heavy burden."  *United States v. Farhane,* 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks omitted).

> He must show more than that a particular summation comment was improper. He must show that the comment, when viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, depriving him of a fair trial.

---

[2] Blakstad does not dispute that even if there was a constructive amendment in the investment fraud counts, Counts 6 and 7 of the S2 Indictment (and there was not, for the reasons discussed above), it would not disturb the jury's guilty verdict on the insider trading counts, Counts One through Five.

*Id.* (citations and internal quotation marks omitted). To determine "whether prosecutorial misconduct caused 'substantial prejudice,' the Second Circuit has adopted a three-part test: the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Elias,* 285 F.3d 183, 190 (2d Cir. 2002)*; see also United States v. Perry*, 643 F.2d 38, 51 (2d Cir. 1981) (finding it "permissible rebuttal" for prosecutor to characterize defense tactic as "desperate" and "struggling").

Where, as here, "the defendant did not object at trial to the statements forming the basis of his appeal, the plain error standard applies, requiring [the court] to reject any assignment of error that does not 'amount to flagrant abuse' which 'seriously affects the fairness, integrity, or public reputation of judicial proceedings,' and causes 'substantial prejudice' to the defendant." *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) (quoting *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005)).

### 2. Discussion

Blakstad argues that his appeal will address "whether the prosecutors committed prosecutorial misconduct during closing argument by their repeated assertion of personal opinion that Mr. Blakstad lied while testifying under oath. This repeated reference to Mr. Blakstad as a liar was arguably plain error." (Mot. 10). Blakstad's motion does not identify any specific remark that he intends to challenge on appeal, nor does he explain how any such remark satisfies the legal standard governing his motion. His argument fails for independent reasons: (1) the summations were not inappropriate, (2) Blakstad did not afford the Court or the Government an opportunity to cure the remarks about which he complains because Blakstad's counsel did not object during trial, (3) there was no prejudice because there is no reason to doubt that Blakstad would have been

convicted absent any allegedly improper remark, and (4) Blakstad cannot establish an error that amounts to flagrant abuse.

First, there is no merit to Blakstad's argument that the Government repeatedly dubbed Blakstad a "liar" or that the prosecutors gave their "personal opinion" that Blakstad had lied during his trial testimony.  (Mot. 10).  In fact, the Government did not use the word "liar" in summation to label or refer to Blakstad.  Instead, the Government argued that Blakstad's testimony was false because it was undermined by other evidence.  (*See, e.g.*, Tr. 1691).  The Government was not offering any "opinion" about the falsity of Blakstad's testimony; it demonstrated its falsity by explaining how it conflicted with documents and other evidence.  (Opinion 25 (observing that "in the context of the entire summation, it was clear that these statements were based on the evidence, not the Government's personal beliefs")). This was entirely proper.  As this Court correctly observed, where, as here, "the defendant's credibility is at issue as a result of testifying, the government can 'properly comment[] on his untruthfulness.'"  (Opinion 24 (quoting *United States v. Ngono*, 801 F. App'x 19, 25 (2d Cir. 2020) (finding that the government's assertions that defendant "lied" in the courtroom were permissible)).  This Court correctly held that "[h]ere, where Blakstad's credibility was clearly at issue as a result of his testimony, the Government's use of the words 'lie' and 'lied' were permissible" under Second Circuit precedent.  (Opinion 24-25 (citing *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002) ("On many occasions, we have upheld convictions after a summation including negative characterizations of witness credibility.")).

Second, even if any of the Government's remarks in summation were arguably improper, Blakstad never even objected during trial.  Accordingly, Blakstad gave no opportunity to the Government or the Court to "adopt" "measures . . . to cure it."  *Shareef*, 190 F.3d at 78 (2d Cir. 1999).  Blakstad also overlooks that the Court repeatedly instructed the jury at the beginning of

trial and again at the end of trial about the Government's burden and Blakstad's lack of one, and the Government likewise expressly stated in "summation that the burden was on the government." *United States v. Elias,* 285 F.3d at 190 n.3.

Third, Blakstad's argument fails for the independent reason that there was no prejudice, and Blakstad identifies none.  As the Court concluded, Blakstad's conviction was assured absent any allegedly improper remark given the overwhelming evidence introduced at trial, which included the testimony of a cooperating witness and several investors, extensive documentary evidence demonstrating the pattern of the defendant's receipt of and trades on inside information, documents proving the defendant's lies to investors and misuse of their funds, and Blakstad's own admissions on cross-examination.  Opinion 27; *see Shareef,* 190 F.3d 71, 78 (2d Cir. 1999).  This evidence also demonstrated the falsity of Blakstad's testimony, which the Court found was perjured.  (*See, e.g.*, Sentencing Tr. 26-28).

Finally, because Blakstad failed to object during trial, as he concedes, his claim is subject to plain error review.  As this Court has already held, Blakstad cannot demonstrate "'plain error' resulting in 'flagrant abuse,' in light of the testimony from Bustos and Blakstad, and the other record evidence in the case."  (Opinion 27; *see also* Opinion 23 (holding that none of Government's arguments constituted plain error).  Blakstad does not challenge that conclusion.  In the context of the two-week trial and several hours of summations, any allegedly improper isolated remark by a prosecutor, without any objection of defense counsel, certainly does not rise to the level of egregious misconduct depriving the defendant of due process.

Accordingly, Blakstad's argument fails on multiple independent grounds.  He cannot establish a substantial question of law or fact that is likely to result in a reversal or new trial,

particularly in view of the deferential standard of review applicable to his claim and the lack of prejudice.

* * *

In sum, none of Blakstad's claims constitutes error at all, let alone an abuse of this Court's substantial discretion.  Nor would any of the challenged rulings or issues, alone or in conjunction, have changed the outcome of this fairly tried case.  Accordingly, Blakstad cannot demonstrate that any of his identified issues "raises a substantial question of law or fact likely to result in (i) reversal, [or] (ii) an order for a new trial."  18 U.S.C. § 3143(b).[3]

## <u>CONCLUSION</u>

For the reasons set forth above, Blakstad's motion for bail pending appeal should be denied.

Dated: New York, New York
      December 22, 2021

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:         /s/
      Edward A. Imperatore
      Jared Lenow
      Assistant United States Attorneys

---

[3] Blakstad mentions in passing that he is being treated for a variety of health conditions and is at increased risk of contracting Covid-19.  (Mot. 5).  Blakstad, who is fully vaccinated against Covid-19 (Tr. 798), does not appear to dispute that his health conditions are irrelevant to the Court's resolution of his motion.  Where, as here, the defendant is not seeking a reduced sentence, the defendant's health is not a factor the Court is directed to consider in determining whether an exception exists to the general, mandatory rule that a defendant "shall . . . be detained" pending appeal.  18 U.S.C. § 3143(b).